LOUIS GRIMESTAD v. L. LOFGREN and Another.[1]

August 7, 1908.

Nos. 15,665—(139).

**Exemption—Residence.**

A debtor sold all his nonexempt property and started to remove to another state, with the intention of establishing a residence there. While on the way, and yet within this state, an attachment was levied on his horse. *Held*, that he was still a resident of the state, within the meaning of the exemption law, and entitled to claim his exemptions.

**Wrongful Levy—Damages.**

This action for damages for wrongful and malicious levying on exempt property is an action for the abuse of process, and not for malicious prosecution. That the plaintiff acted under the advice of counsel is not a defense to such an action, but the fact may be shown in mitigation of damages.

**Evidence.**

The error of the court in excluding evidence *held* not available to appellant, because no sufficient offer to prove was made.

Action in the district court for Clay county to recover $1,000 for the alleged wrongful levy of an attachment upon a horse and for damages resulting therefrom. The case was tried before Baxter, J., and a jury which rendered a verdict in favor of plaintiff for $100. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Affirmed.

*Peter C. Heimark, C. A. Nye,* and *C. G. Dosland,* for appellants.

*Chas. S. Marden,* for respondent.

ELLIOTT, J.

For about five years prior to the events herein narrated Louis Grimestad resided with his family upon a farm in Becker county,

[1] Reported in 117 N. W. 515.

Minnesota, known as the "Showalter Farm." Intending to remove with his family to North Dakota, where he had made arrangements for establishing a new home, Grimestad on April 8, 1907, held an auction sale of his personal property, at which he disposed of all his horses but one gray team. Showalter had a mortgage upon this team, and Grimestad informed him that he intended to remove to Dakota, and Showalter thereupon filed his mortgage in Dakota. Grimestad was indebted to Lofgren, and some time before this auction sale Lofgren and his attorney, Heimark, went to the farm for the purpose of collecting the debt. While there Heimark, in the presence and hearing of Lofgren, threatened to attach the gray team if Grimestad attempted to move from the state. Immediately after the sale Grimestad and his family started for North Dakota across country with the team and his household goods. On April 17, 1907, Lofgren went before a justice of the peace and made an affidavit that Grimestad was "about to remove his property out of the state with intent to defraud his creditors." A writ of attachment was then issued and placed in the hands of a constable, the appellant McDonald, with instructions to seize a certain gray horse belonging to defendant. Grimestad and his family had traveled fifteen miles on their journey toward North Dakota, and while they were yet within the state of Minnesota were overtaken by the constable, who followed them to the village of Felton and there made the levy on one of the horses of the team. The result was to leave Grimestad stranded and without the means to proceed on his journey. His family was without shelter, and he had no money.

The levy was made on April 17, and on the following day Grimestad made an oral demand for the possession of the horse on the ground that it was exempt. On April 20 a similar demand was made in writing, accompanied by an affidavit in which Grimestad swore that the horse was exempt. When the case was called for trial in the justice court the plaintiff, Lofgren, moved that the levy be released on the ground that Showalter had made and served a verified statement of the amount due on the mortgage and demanded the property, in accordance with section 3474, R. L. 1905. At the same time the defendant, Grimestad, moved that the levy be discharged on the ground that the horse was exempt. The plaintiff's motion was granted, and

the levy was discharged, and the horse was delivered to Grimestad at Felton, where it had been taken from him.

This action in the district court was commenced on April 18, before the levy was released, and in the complaint the plaintiff alleged his ownership of the horse, its exemption from attachment or levy under execution, the defendant's knowledge of that fact, the wilful, wrongful, and malicious causing of an attachment to issue, and that the defendant, "wilfully, wrongfully and maliciously, knowingly and with intent to harass, injure, and oppress this plaintiff, did * * * cause to be made a pretended levy under said attachment upon said horse and the said defendant as aforesaid did then and there wilfully, wrongfully and maliciously, knowingly and with intent to harass, injure and oppress this plaintiff, seize, take, and carry away * * * said gray horse contrary to the rights and. wishes and objections of the plaintiff." It was also alleged that such wrongful taking caused the plaintiff and his family great inconvenience, discomfort, hardship, and disgrace, injured the health of his children, and caused the plaintiff great mental and bodily suffering, and necessitated the incurring of extra expense, and that by reason of the wilful and wrongful taking, carrying away, holding, detention, and conversion of said gray horse by the defendant, and of all the facts and circumstances herein stated, the plaintiff has suffered damage in the sum of $1,000.

The answer admitted the levy of the attachment, alleged that it was in good faith, that the defendant had then ceased to be a resident of the state, that the horse was not .exempt, and that the levy had been released and the horse returned to the plaintiff because of the existence of a mortgage upon it.

The reply admitted the return of the horse after the commencement of the action, and demanded judgment for damages. The plaintiff recovered a verdict for $100, and the appeal is by the defendant from an order denying a motion for judgment notwithstanding the verdict or for a new trial.

The record presents the questions: Did the court err (1) in instructing the jury that the horse was exempt; (2) in excluding evidence offered by the defendant to show that in instituting the attachment proceedings they acted under the advice of counsel; and (3) in instructing the jury that the case was one in which exemplary dam-

ages might be awarded? It is also contended that the verdict is not justified by the evidence and that the damages are excessive.

1. The vital question is, was the horse exempt at the time of the attachment? The trial court instructed the jury that it was, and this was correct, unless Grimestad had lost his right to claim the exemption because he had abandoned his residence in Minnesota and in legal effect removed to another state. Grimestad had sold all his personal property, except one team and his household goods, at public sale, and at the time of the levy was, with his family, on his way toward the state line, with the intention of crossing into North Dakota and there making a new home for himself and family. But he and all his belongings were still within the state of Minnesota and subject to the jurisdiction of its courts. He had not in fact left the state, and had not established a residence in North Dakota. The trial court instructed the jury that: "He had all the rights of a citizen of Minnesota, not having departed from the state. His family were here, and had been here, and until a party brings his family out of the state, as long as they are here, although he may start for that purpose, he is protected by the exemption laws of the state. Had they moved across the river, and he come back here with his team, it would be another thing. He was either a resident here, or, according to the testimony, a resident of North Dakota. A man's residence does not cease in this state so long as it is his abiding place, and there is no evidence here that a change had taken place which would rob him of his right as a citizen of Minnesota. On that point I instruct you as a matter of law."

There is some confusion in the cases as to whether a person under such circumstances has ceased to be a resident of the state, within the meaning of the exemption statutes. This is due in a measure to the failure to distinguish between attachment and exemption laws, and thus lose sight of the liberal and humane spirit which should characterize the construction of the latter class of statutes. The cases are not uniform, even when construing attachment laws.

Within the meaning of such statutes, a person becomes a nonresident by actually leaving the state with the intention of becoming a nonresident (4 Cyc. 434); but a person's mere intention to remove (Mann v. Taylor, 78 Iowa, 355, 43 N. W. 220; Lyle v. Foreman, 1

Dall. [Pa.] 480, 1 L. Ed. 232; Wheeler v. Degnan, 2 Nott & McC. [S. C.] 323), or preparations to send his family away (Stafford v. Mills, 57 N. J. L. 570, 31 Atl. 1023), or surrender of the premises where he has been living (Kugler v. Shreve, 28 N. J. L. 129), without an actual removal, does not change his status as a resident. In Ballinger v. Lantier, 15 Kan. 608, it was held that a person who leaves his home with the intention of leaving the state does not become a nonresident until he gets outside of the state. In Shipman v. Woodbury, 2 Miles (Pa.) 67, it was held that the property of a person who disappeared after having made statements that he intended to remove from the state, but who in fact went only to another part of the state and returned within ten days, was not subject to attachment. There are cases which hold that a person becomes a nonresident as soon as he begins to remove his person from the place of residence, and before he has crossed the state line. Moore v. Holt, 10 Gratt. (Va.) 284; Clark v. Ward, 12 Gratt. (Va.) 440; Spalding v. Simms, 4 Metc. (Ky.) 285; State v. Allen, 48 W. Va. 154, 35 S. E. 990, 50 L. R. A. 284, 86 Am. St. 29; Brown v. Beckwith, 58 W. Va. 140, 51 S. E. 977, 1 L. R. A. (N. S.) 778, 112 Am. St. 955, annotated. In Iowa and Missouri the statutes take away the exemption of a debtor who starts to leave the state, or is about to take up his abode in another state. See Graw v. Manning, 54 Iowa, 719, 7 N. W. 150; Hackett v. Gihl, 63 Mo. App. 447. The West Virginia cases which hold that nonresidence has the same meaning in the exemption as in the attachment laws do not seem to rest on very satisfactory reasons.

Our statute authorizes the levy of an attachment when the defendant is not a resident of the state, or when he has departed from the state with intent to delay or defraud his creditors. R. L. 1905, § 4216. The justification of such statutes is found in the inability to serve process upon the defendant in the ordinary manner. In the case of a nonresident, personal service cannot be had; and this is also true when the debtor has left the state with the intent to defraud his creditors. Having left his property behind, the question arises as to the right of a creditor to take that property and apply it to the payment of his debt. The right to attach is given because the fraudulent disappearance of the debtor from the jurisdiction has made it im-

possible to serve process in the ordinary way. This may be a good reason for holding that the attachment may be levied as soon as the debtor has abandoned his residence and started for another state; but we do not determine that question, as no attempt is here made to justify the levy upon the ground that Grimestad had left the state with intent to delay and defraud his creditors. It is true that the attachment was issued upon an affidavit in which this was stated as the ground for claiming the right; but the case, as presented to us, has resolved itself into the simple question whether or not the property levied on was exempt from execution by reason of the fact that Grimestad was a resident of the state at the time of the levy.

This question of exemption presents a different phase of the matter of residence. The benefit of the exemption laws of this state is granted only to debtors who have an actual residence in the state (R. L. 1905, § 4317), and an absconding debtor, who has left the state without any intention of returning, and become a resident of another state, cannot avail himself of the benefits of the exemption laws in respect to personal property left behind him and subsequently seized upon execution. Orr v. Box, 22 Minn. 485. In favor of residents of the state the exemption laws should be liberally construed, in order to advance the humane purpose of preserving to the unfortunate or improvident debtor and his family the means of obtaining a livelihood and thus prevent him from becoming a charge upon the public. Rothschild v. Boelter, 18 Minn. 331 (361); Berg v. Baldwin, 31 Minn. 541, 18 N. W. 821; Boelter v. Klossner, 74 Minn. 272, 77 N. W. 4, 73 Am. St. 347; Olin v. Fox, 79 Minn. 459, 82 N. W. 858. It is conceded, of course, that Grimestad had formed the intention of abandoning his residence and removing from the state; but the rule is well established that to effect a change of residence there must be both intention and act, and that an intention to remove is not alone sufficient to defeat a claim to an exemption. Springer v. Lewis, 22 Pa. St. 191; Urquhart v. Smith, 5 Kan. 447; Winslow v. Benedict, 70 Ill. 120. Preparations to leave (Herzfeld v. Beasley, 106 Ala. 447, 17 South. 623; Anthony v. Wade, 1 Bush [Ky.] 110; Rasco v. Sheet, 8 Ky. L. R. 703), such as the delivery of one's furniture to the railroad for shipment (Wood v. Bresnahan, 63 Mich. 614, 30 N. W. 206; Herzfeld v. Beasley, 106

Ala. 447, 17 South. 623), or even sending one's family to another state with the intention of following them after disposing of certain property (Stirman v. Smith [Ky.] 10 S. W. 131), is not sufficient to deprive the owner of the benefit of exemptions secured to residents of the state. See also Bonnel v. Dunn, 28 N. J. L. 153.

Taking into consideration the nature of the exemption laws, the purposes for which they were enacted, and the liberal spirit in which they should be construed, we are satisfied that the trial court properly ruled that Grimestad was an actual resident of the state so long as he was within the jurisdiction of the state and had not actually established a residence elsewhere. He was not engaged in the perpetration of a fraud or attempting to avoid service of process. He was exercising his right to pass through the state while on his journey to another state, where he intended to establish a new residence. He was still within the jurisdiction and entitled to the protection of the laws of Minnesota. The property which he was taking with him was exempt under those laws. He was entitled to carry that property with him to the state line, and immediately upon taking it into the other state and establishing a residence there to claim such exemptions therein as were authorized by the laws of that state. The instruction was therefore correct.

2. The affidavit for attachment alleged that the defendant was about to leave the state with intent to defraud his creditors. The question whether Lofgren had probable cause to believe that this statement was true is not here involved. This action was brought to recover damages for the malicious abuse of the process of the court. It was brought while the attachment action was still pending and undetermined, and this alone would have been fatal to an action for malicious prosecution. Luby v. Bennett, 111 Wis. 613, 87 N. W. 804, 56 L. R. A. 261, 87 Am. St. 897; 26 Cyc. 57, and other cases there cited. An action based on the abuse of process differs from an action for malicious prosecution "in at least two respects, first, in that want of probable cause is not an essential element; and, second, that it is not essential that the original proceeding shall have terminated." Hale, Torts, 361 (1 Jaggard, Torts, 634), quoted in 26 Cyc. 6; Paul v. Fargo, 84 App. Div. 9, 15, 82 N. Y. Supp. 369. This action proceeds upon

the theory that the attachment was maliciously levied on exempt property for the purpose of forcing Grimestad to do something that he could not legally be compelled to do. Docter v. Riedel, 96 Wis. 158, 71 N. W. 119, 37 L. R. A. 580, 65 Am. St. 40.

We are not required to determine whether the good-faith acceptance of the advice of counsel is a defense in an action for malicious prosecution. The gist of the present action is the malicious levy upon exempt property, and, although the fact that counsel advised that the property was not exempt may not have constituted a defense, it was admissible for the purpose of reducing the amount of punitive damages which the jury might have awarded. Chambers v. Upton (C. C.) 34 Fed. 473. The trial court excluded evidence of this character; but the appellant has not made a record which entitles him to predicate error upon the rulings. When the case was called for trial, the defendant asked leave to amend the answer by inserting an allegation to the effect that in making the levy he acted in good faith upon the advice of counsel. When it became apparent that the allowance of the amendment would result in a continuance of the case, he withdrew his application and went to trial upon the original pleadings. But the evidence was admissible in mitigation of damages under the original answer, and an unsuccessful effort was made to introduce it. The defendant Campbell was asked whether he acted under the advice of counsel, and after the objection to the evidence was sustained no offer to prove was made. Similar questions were asked the defendant Lofgren, and the attorney, Mr. Heimark, and an offer was made to prove by Lofgren that he acted in good faith upon the advice of counsel that Grimestad had abandoned his residence and ceased to be a resident of Minnesota, and that the horse was subject to levy. The offer was insufficient, as it contained only a part of the necessary elements; for instance, it did not state that a full and fair statement of the facts within the knowledge of the defendant, or which with due diligence he might have known, had been made to his counsel. See 26 Cyc. 54.

3. The other assignments of error have been considered, but they do not require especial consideration. The jury returned a verdict in favor of the plaintiff for $100, and in view of this small verdict it

is apparent that the jury were not greatly affected by what was said by the court with reference to punitive damages. Upon the evidence it was proper to submit the question of punitive damages to the jury (Matteson v. Munro, 80 Minn. 340, 341, 83 N. W. 153), and there were no errors in the charge which can be considered as prejudicial to the appellant.

Order affirmed.