DAN POZNANOVIC v. OSKAR MAKI.[1]

February 7, 1941.

No. 32,844.

[1]Reported in 296 N. W. 415.

*F. J. Rosemeier,* for appellant.

*Stone, Manthey, Carey & MacDougall* and *M. H. Greenberg,* for respondent.

PETERSON, JUSTICE.

This is an action for a declaratory judgment to determine plaintiff's right to levy on defendant's automobile under an execution. The facts were stipulated to the effect that defendant is a farmer; that the automobile in question is a Buick coupé with a compartment built in the body; that defendant uses the automobile primarily for hauling his farm produce to town and bringing back groceries and supplies, for which purpose the compartment is highly useful; and that it is necessary for him to have and use the car in furtherance of his occupation of farming.

Exemption was claimed on the grounds that the automobile was a wagon and a tool or instrument of a mechanic, miner, or other person within the meaning of 2 Mason Minn. St. 1927, § 9447 (6, 8). The court below first determined that the automobile was exempt, but on motion to strike the conclusions of law decided that it was not exempt.

■ The first claim is that the automobile is a wagon within the meaning of 2 Mason Minn. St. 1927, § 9447 (6), which provides for the exemption of—

"three cows, ten swine, one yoke of oxen and a horse, or in lieu of such oxen and horse, a span of horses or mules, one hundred chickens, fifty turkeys, twenty sheep, and the wool from the same, either in raw material or manufactured into yarn or cloth; food for all the stock above mentioned necessary for one year's support, either provided or growing, or both, as the debtor may choose; *one wagon, cart, or dray,* one sleigh, two plows, one drag; and other farming utensils, including tackle for teams, not exceeding three hundred dollars in value." (Italics supplied.)

It must be conceded that an automobile is not in fact a wagon. The automobile was neither known to nor anticipated by the legislature of 1858 when the use of the word wagon was adopted in the exemption law. If an automobile should be held to be a wagon within the meaning of the statute, it must be under the rule that a statute couched in general terms creating rights and liabilities in respect to known facts and conditions is intended to apply and embrace by prospective operation somewhat dissimilar but analogous facts or conditions subsequently arising or coming into existence.

There is of course some analogy and similarity between an automobile and a wagon. Both are vehicles having four wheels. Their uses may be and generally are the same. At that point similarity ceases. In other respects they are essentially different. A wagon is generally propelled by animal power. Animals suitable to provide such power, it is to be noted, are declared to be exempt. An automobile is propelled by mechanical or electrical power supplied by an engine or batteries which are an integral part of the vehicle. By analogy to a wagon, the automobile when it first made its appearance was sometimes called a horseless carriage.

In Whitney v. Welnitz, 153 Minn. 162, 190 N. W. 57, 28 A. L. R. 68, we fully considered the question and held that an automobile was not so similar to a wagon in character and use as to come within that term as used in the exemption statute. The rule by which a statute is held to apply to and embrace by prospective operation somewhat dissimilar but analogous facts and conditions subsequently arising was held not applicable. Language lacking such comprehensive generality should not be construed to include unknown things which might spring into existence in the future. Funk v. St. Paul City Ry. Co. 61 Minn. 435, 63 N. W. 1099, 29 L. R. A. 208, 52 A. S. R. 608.

It is earnestly contended that the reasons stated for our decision in the Welnitz case are contrary to fact. Much assailed is the statement (153 Minn. 164):

"The wagon is made use of by the owner in furtherance of his occupation and as a necessary instrumentality or agency in the conduct of the same; for example the farmer, the drayman and others engaged in carting and hauling commodities for hire, from which he earns his living and supports those dependent upon him. The automobile is not of that character, nor adapted for purposes of the kind. Its predominating element is that of a pleasure vehicle, not necessarily perhaps a differentiating fact, and is owned and possessed by those who pay their debts as well as by those who do not."

We must acknowledge with all candor that the criticism of the statement quoted is well taken. The statement is so plainly contrary to well established fact that it cannot be justified.

The conclusion reached in the Welnitz case is correct upon the ground there given that the word "wagon" in the exemption statute should not be construed to operate prospectively so as to include an automobile. Legislative policy and the history of § 9447(6) make it clear that the word "wagon" is used therein with a restricted meaning applying only to that particular type of vehicle. Section 9447 enumerates in the list of exemptions over 50 specific kinds of property affecting many different classes of persons. The subjects of exemption are described in specific, not general terms. For example, the farmer is allowed three cows, ten swine, etc. The exemption statute executes the mandate of Minn. Const. art. 1, § 12, that a reasonable amount of property to be determined by law shall be exempt from any debt or liability. The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life. The legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors. In Grimes v. Bryne (1858) 2 Minn. 72 (89), we said (p. 86):

"The legislature, knowing that the general exemption of a farm in the country, or a house and lot in town, or any other general

exemption of specific property, must, in the nature of things, be unequal in its operation upon a community engaged in all the different pursuits of life—commercial, professional, agricultural, and mechanical—and inadequate to the end proposed;⁵ they have, therefore, made, by the act of August 12, 1858, such specific enumeration of the property to be exempt as would divide the benefits of the exemption as equally as possible among all the citizens of the state, according to their individual circumstances and necessities, when the hour of misfortune overtakes them."

The legislative policy of defining exemptions in specific and not general language has been definitely manifested with respect to the subject matter here under consideration. As we pointed out in the Welnitz case, 153 Minn. 162, 164, 190 N. W. 57, 28 A. L. R. 68, the statute in its original form exempted a "vehicle." R. S. 1851, c. 71, § 100(9). In 1858 the language was changed by substituting the words "wagon, cart or dray" for the word "vehicle." Comp. St. 1849-1858, c. 61, § 99(6). We need not decide whether the word "wagon" may ever be considered to be general in its nature. The word "vehicle" in the 1851 law certainly was a general term. The words "wagon, cart or dray" are more specific and restricted, since they are particular kinds of vehicles. The plain inference is that the legislative intent was to adopt specific and restricted terms in place of a general one. By this process a legislative intent was manifested that only the subjects definitely and specifically enumerated were to be exempt. Thus a construction of the language is precluded which would embrace other subjects, upon the theory that the terms were to be regarded as general and broad enough to include by analogy similar subjects coming into existence in the future. The provision for the several definitely described subjects of exemption shows that the intention was to include only those mentioned and to exclude all others. The manifestation of legislative intent by enumeration of the specific subjects which were to be included in the list of exemptions makes applicable the maxim that the expression of one thing is the ex-

clusion of another. See Cohen v. Gould, 177 Minn. 398, 405, 225 N. W. 435.

The intention of the legislature to deal with the subject by making specific exemptions by restricted language is shown by the amendments of the statute. In 1899, after our decision in Shadewald v. Phillips, 72 Minn. 520, 75 N. W. 717, holding that a bicycle was not exempt as a wagon, cart, or dray and that the limits of inclusion had been reached in Kimball v. Jones, 41 Minn. 318, 43 N. W. 74, holding a carriage to be a wagon, and in Allen v. Coates, 29 Minn. 46, 11 N. W. 132, holding a buggy to be a wagon, an amendment was adopted exempting "one bicycle and one typewriting machine." L. 1899, c. 24. Likewise, after our decision in Rothschild v. Boelter, 18 Minn. 331 (361), holding that a watch and chain were not exempt, an amendment was adopted exempting a watch but not a chain. See 2 Mason Minn. St. 1927, § 9447(10).

It is urged that the weight of authority is against our decision in the Welnitz case, 153 Minn. 162, 190 N. W. 57, 28 A. L. R. 68. There we took notice of the diversity of holdings and the reasons therefor. We do not deem it necessary to cover that ground again. As we pointed out in the Welnitz case, the authorities are not in harmony principally because of differences in the language and purposes of the different statutes. For example, the Iowa statute uses the word "vehicle," and its court holds that an automobile is a vehicle. Lames v. Armstrong, 162 Iowa, 327, 144 N. W. 1, 49 L.R.A.(N.S.) 691, Ann. Cas. 1916B, 511. Such language is general and comprehends by prospective operation all vehicles, including automobiles. The cases which hold contrary to our decision were deemed to be distinguishable and not controlling under our statute. We adhere to that view.

■ Defendant is not a "mechanic, miner, or other person" within the meaning of that part of 2 Mason Minn. St. 1927, § 9447(8), which provides for the exemption of "the tools and instruments of a mechanic, miner, or other person, used and kept for the purpose of carrying on his trade."

Being neither a mechanic nor a miner, defendant is entitled to claim such exemption only if a farmer is an "other person."

This part of subd. 8 includes persons who earn their living by the use of tools and instruments in whole or part. The term "other person" derives its meaning by association from the classes specifically enumerated and is restricted by that meaning. It does not include all persons not specifically enumerated. In Grimes v. Bryne, 2 Minn. 72 (89), we said of these words (p. 87):

"It is evident that a man may derive his principal support from some business in the exercise of which tools and instruments (probably meaning implements) are absolutely necessary, and still not be strictly a mechanic or miner. It was such persons that were intended to be included by the words, 'or other persons,' in this subdivision. It should be read, therefore, 'The tools and instruments [implements] of every mechanic, minor [miner], or other person, to the exercise of whose trade or business tools or implements are necessary, used or kept for the purpose of carrying on his trade or business, &c. * * *'"

So construed the term "other person" does not include a farmer.

In Bevitt v. Crandall (1865) 19 Wis. 610, 615, a farmer claimed that he came under the term "other person." The Wisconsin exemption statute contained separate sections which were substantially the same as subds. 6 and 8 of ours. The court applied the maxim, *noscitur a sociis,* in construing the term and held that a farmer was not an "other person" within the meaning of the statute. It pointed out that a farmer's exemptions are provided in the section which corresponds to our subd. 6.

Such a construction seems to accord with the manifest legislative intent of making specific exemption for each class of debtors according to their needs and circumstances.

Affirmed.