# FULLERTON LUMBER COMPANY v. WILLARD C. CARSTENS, d.b.a. CARSTENS CONSTRUCTION COMPANY. VALLEY VIEW ROAD STABLES, GARNISHEE.

80 N. W. (2d) 1.

November 23, 1956—No. 36,839.

*Fred Albert,* for appellant.

*Archibald Spencer* and *Best, Flanagan, Rogers, Lewis, Simonet &
Bellows,* for respondent.

NELSON, JUDGE.

The question presented here is whether a horse not used for farm
purposes is exempt from claims of creditors, the owner's occupation
and business being that of a contractor. The plaintiff Fullerton
Lumber Company issued and served a garnishment summons upon
Willard C. Carstens, d.b.a. Carstens Construction Company, as de-
fendant, and Clarence E. Peterson, d.b.a. Valley View Road Stables,
as garnishee. The main action and claim thereunder is not involved
in the present proceedings. At the disclosure the garnishee testified
that, at the time of the service of the garnishment summons upon
him, he was holding in his possession a bay mare, the personal prop-
erty of defendant. Thereafter defendant moved for an order dis-
charging the garnishment and releasing the horse for the reason
that the horse was exempt property. This motion was supported by
his affidavit that his first occupation was that of contractor but that
he engaged in the trading of horses for profit from time to time. The
court denied the motion and defendant appeals therefrom.

After the order denying the motion to discharge the garnishment
was entered on November 15, 1955, the garnishee brought lien fore-
closure proceedings as provided in case of personalty in possession
under M. S. A. 514.18 to 514.22, inclusive, to recover stable fees for
care of horse and his costs and expenses of sale. The sale of the horse
was held March 7, 1956, and at the sale it was sold to the stable-
keeper for the stable fees and expenses of sale.

The garnishment below has not been discharged even though the
sheriff returned unsatisfied the execution issued following judgment
in the main action, reporting no property either real or personal as
being found belonging to defendant. This execution return bears
date November 29, 1955, while the possessory lien foreclosure pro-

ceedings were terminated March 7, 1956. No redemption is disclosed by the record.

Defendant presents a single assignment of error as follows:

"The trial court erred in denying appellant's motion to discharge the garnishment and release the horse held thereunder, and erred in holding that said horse was not exempt property within the provisions of M. S. A. 550.37(6)."

The only question for review is one of law requiring the construction of § 550.37(6) of our exemption statute.

Plaintiff has taken the position that § 550.37(6), which exempts from attachment or execution, among other items enumerated, a "span of horses," limits the particular exemption literally to a span of horses so that a debtor may not claim an exemption for a single horse or a horse not one of a span. He further contends that, since defendant cannot be construed to be a farmer and is not engaged in farming, he cannot claim the exemption of a horse or a span of horses under said section.

■ We are not impressed with the argument that the right of exemption, if it did exist under this subdivision of the statute, is applicable only to a span of horses and not a single horse or one of a span of horses. It would not be consistent with the liberal purposes and construction of the exemption statute to adopt a rule which would imply that if one of a span of horses died the debtor, entitled to claim a span of horses as exempt, would thereby lose his right of exemption to the other horse. Clearly, the statute intended exemption of a team or span of horses, meaning two horses, and gives the debtor the right, if § 550.37(6) applies to his classification, to claim as exempt one or the other or both of such span of horses.

■ We come to the question of whether the defendant, a contractor who occasionally engages in the business of trading horses for profit, can claim an exemption for a horse or a span of horses under the provisions of § 550.37(6). Does the defendant, whose business is that of a contractor and who, as such, is the owner of a bay mare, come within the classification contemplated by said par. (6) of the exemption statute? Does he qualify as the owner of "a span

of horses or mules or in lieu of such span of horses or mules, one farm tractor," while neither following the occupation of a farmer, a drayman, or one carting and hauling commodities for hire from which he earns his living and provides support for himself and those dependent upon him?

Defendant argues that said par. (6) of the statute must be interpreted literally and argues that a literal interpretation is necessary because the legislature through a careful delineation of specific exemptions manifests a legislative intent that the classes of exemptions be applied according to the specific wording of the statute. Consequently defendant argues that the phrase "span of horses" should apply to all horses irrespective of the occupation of the owner or the circumstances surrounding the use which is made of a horse or a span of horses. He cites the case of Grimestad v. Lofgren, 105 Minn. 286, 117 N. W. 515, 17 L.R.A.(N.S.) 990, to sustain his position. In that case the debtor, a farmer, had sold all his nonexempt property at auction except a team of horses. He was en route to the State of North Dakota and using the team for transportation when one of the horses of the team was attached by a local constable while he was yet within the State of Minnesota. This court held that the team of horses was exempt under the statute. Defendant thus argues that this holding indicates that use is not a valid criterion in determining the application of par. (6) and reasons that since the debtor had left his farm he was no longer engaged in the occupation of farming and that therefore the exemption was applied to horses generally rather than to horses being used in the occupation of farmer, drayman, or carting and hauling goods and commodities for hire in order to provide support for himself and his family. See, Whitney v. Welnitz, 153 Minn. 162, 164, 190 N. W. 57, 58, 28 A. L. R. 68. The Grimestad case did not involve a determination of use; no one questioned that the owner of the team was still a farmer. The case resolved itself into a simple question of whether the property levied on was exempt from execution by reason of the fact that Grimestad, who was the plaintiff in that action, was the owner of the team and a resident of the state at the time of the levy.

Therefore the basis of that decision involved the question of residence of the debtor rather than the use of the horses, and the case is not determinative here.

The case of Anderson v. Ege, 44 Minn. 216, 46 N. W. 362, which has also been cited, left the same question open. In that case the defendant had attached a horse used by plaintiff for farming purposes. However, for six or seven months the plaintiff had procured the service of a horse trainer to have him train it for racing and for testing the quality of the horse for use as a racehorse. Defendant contended that since the horse was intended to be used for racing purposes it was not exempt under the statute. This court concluded that, since the horse had actually never been raced, it was still a farm horse and therefore was subject to exemption, and this court did not decide whether the horse, had it been used for racing purposes, would have been subject to exemption. That case in no way serves as a precedent for deciding the present issue.

The case of Bertozzi v. Swisher, 27 Cal. App. (2d) 739, 81 P. (2d) 1016, has been cited by the plaintiff as authority for denying defendant's exemption claim herein. The California court held in that case that its exemption statute did not apply to racehorses. While many of the facts therein are similar to the instant case, the exemption statute of that state specifically provided that the exemption would apply only to horses used in designated occupations. Consequently, that case cannot be said to be controlling when applied to the Minnesota exemption statute which fails, in so many words, to designate the occupations which are controlling.

Many of the Minnesota cases, however, dealing with our exemption statute state its two-fold purpose, i.e., the purpose of securing to debtors free from creditors' claims items of personal and sentimental value; and the purpose of preserving that property of the debtor which is essential to his occupation as a means of his livelihood. This court, in a leading case on the subject, Poznanovic v. Maki, 209 Minn. 379, 382, 296 N. W. 415, 417, states the purpose as follows:

"* * * The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life. *The legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors.*" (Italics supplied.)

■ The bay mare garnished in the hands of the stablekeeper, in the instant case, was not property required by the debtor to maintain a reasonable means of support. Consequently, in view of the legislative purpose of the exemption statute as interpreted by this court in the Poznanovic case, we come to the question whether the debtor whose business is that of a contractor qualifies where the legislative purpose of our exemption statute was to adapt the exemptions granted to the circumstances and needs of different classes of debtors and not generally to any person who may be the owner of a span of horses, or a horse.

Our exemption statute dates back to Pub. Stat. 1849-1858, c. 61, § 90, which provided in part as follows:

"The tools, implements, material, stock, apparatus, team, vehicle, horses, harness, library, or other things, to enable any person to carry on the profession, trade, occupation or business in which such person may be wholly or principally engaged, not exceeding in value two hundred and fifty dollars; the word team, in this subdivision, shall be construed to mean either one yoke of oxen, a horse, or a pair of horses, as the case may be;"

The aforesaid statutory provision was repealed by the revised statutes of 1866 and G. S. 1866, c. 66, § 279, was adopted, which provided:

"*Sixth.* Three cows, ten swine, one yoke of oxen and a horse, or in lieu of one yoke of oxen and a horse, a span of horses or mules, twenty sheep, and the wool from the same, either in the raw material or manufactured into yarn or cloth; the necessary food for all the stock mentioned in this section for one year's support, either

provided or growing, or both, as the debtor may choose; also, one wagon, cart or dray, one sleigh, two plows, one drag, and other farming utensils, including tackle for teams, not exceeding three hundred dollars in value;

\* \* \* \* \*

"*Eighth.* The tools and instruments of any mechanic, miner or other person, used and kept for the purpose of carrying on his trade, and in addition thereto, stock in trade not exceeding four hundred dollars in value; the library and implements of any professional man; all of which articles hereinbefore intended to be exempt, shall be chosen by the debtor, his agent, clerk or legal representative, as the case may be."

By subsequent amendments up to and including L. 1941, c. 351, § 1, par. (6) was changed to read as follows:

"6.   Three cows, ten swine, a span of horses or mules *or in lieu of such span of horses or mules, one farm tractor, 100* chickens, *50* turkeys, *20* sheep, and the wool from the same, either in raw material or manufactured into yarn or cloth; food for all the stock above mentioned necessary for one year's support, either provided or growing, or both, as the debtor may choose; one wagon, cart, or dray, one sleigh, two plows, one drag; and other farming utensils, including tackle for teams, not exceeding $300.00 in value." (Italics supplied as to amended part.)

We are concerned, in the case at bar, with par. (6) as last amended in the year 1941. In the early case of Grimes v. Bryne, 2 Minn. 72 at p. 78 (89 at p. 96), Mr. Justice Flandrau, in discussing the inception and purpose of the exemption statute in this state and having reference to the passage of the act of August 12, 1858, said:

"\* \* \* In citing those cases which fall within the remedy exclusively, and, consequently, within the power of state regulation, they *instance limitation laws, and add,* 'that a state, if it thinks proper, may direct that the necessary implements of agriculture, the tools of a mechanic, and articles of necessity in household furniture, shall, like wearing apparel, not be liable to execution on judgments.' "

After commenting that, by the constitution of the state it was the duty of the legislature to exempt a reasonable amount of property from levy and sale on process, Mr. Justice Frandrau went on to say that there was very little difference in the amount of property exempt under the law of 1858 than was exempt prior to its passage. After discussing the constitutionality of the exemption law, it was stated in the opinion that the only remaining question was *whether the plaintiff fell within the class of persons entitled to the benefits of subd. 8 of § 8 of the 1858 law.* This court then went on to say that there had therefore been made by the act of August 12, 1858, such specific enumeration of the property to be exempt *as would divide the benefits of the exemption as equally as possible among all the citizens of the state, according to their individual circumstances and necessities when the hour of misfortune overtakes them.*[1] As indicating this court's approach to the construction of the exemption statute in that early case, we quote the following (2 Minn. 86 [104]):

"* * * It is intended as a shield to the unfortunate, and not to increase the facilities of the dishonest to avoid justice. It does not contemplate nor comprehend that deliberate and intentional insolvency which would invest all its means in the catalogue of exempted property, and then proclaim its inability to pay; but means, that when the debtor has surrendered to, or been divested of his general property by, his creditors, he may reserve from the wreck of his fortune, *be it large or small, such of the exempted articles as are best calculated, from the nature of his particular case, to prevent him and his family (if he has one) from coming to actual want, and to furnish them with the necessaries of life.* The first seven sections preserve, to everyone who may be fortunate enough to own or possess one, a homestead. The first seven subdivisions of section eight enumerate a large amount of various kinds of property, some of which

[1]This court cited Grimes v. Bryne, 2 Minn. 72 (89), in the Poznanovic case as authority in support of its conclusion that the legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors.

may be very appropriate and necessary for all persons, irrespective of the nature of their pursuits, while some of the articles would be utterly useless and unnecessary to debtors of certain classes. While the 'family Bible,' 'pictures,' 'school books,' 'pew in a place of public worship,' 'wearing apparel,' 'household furniture,' 'cows,' 'swine,' 'food,' and many of the other articles enumerated, would be as necessary and proper for a shoemaker and carpenter residing in a city, with no land to cultivate, as for a farmer on his farm, still it would be difficult to see in what manner three hundred dollars' worth of farming utensils could benefit him, should he have them on hand. Nor is it less easy of solution how the tools and instruments of a dentist, surgeon, or watchmaker, could relieve the distress, or add to the comfort, of an insolvent farmer. *The act cannot, therefore, have intended that all or any of the enumerated articles shall be exempt in the hands of every citizen, without regard to circumstances, but must receive a construction in accordance with its general intent, as evidenced by the nature of the subject treated of, and the general spirit of such legislation.*" (Italics supplied.)

In Whitney v. Welnitz, *supra,* plaintiff, the execution debtor, claimed an automobile as exempt under the provisions of G. S. 1913, § 7951(6), on the ground that the automobile was so related in character and general use to the wagon exempted under par. (6) as to come within the purposes of the exemption statute. This court said that (153 Minn. 164, 190 N. W. 58) "we discover no sufficient basis for the conclusion that the automobile is so related in character and general use to the wagon as to come within the exemption purposes of this statute," and then went on to say that "The wagon is made use of by the owner in furtherance of his occupation and as a necessary instrumentality or agency in the conduct of the same; for example the farmer, the drayman and others engaged in carting and hauling commodities for hire, from which he earns his living and supports those dependent upon him."

We come now to a further consideration of Poznanovic v. Maki, *supra,* wherein plaintiff brought an action for a declaratory judgment to determine plaintiff's right to levy on defendant's automobile

under an execution. The facts in that case were that the defendant was a farmer and that the automobile in question was a Buick coupe with a compartment built in the body. The defendant used this automobile primarily for hauling his farm produce to town and bringing back groceries and supplies, for which purpose the compartment was highly useful. The defendant claimed that it was necessary to have and use the car in furtherance of his occupation of farming and exemption was claimed on the grounds that the automobile was a wagon and a tool or instrument of a mechanic, miner, or other person within the meaning of Mason St. 1927, § 9447(6, 8). It was decided by the court below that the automobile was not exempt; that the automobile was not a wagon within the meaning of the exemption statute, par. (6), as it read before being amended by the laws of 1941. This court affirmed, holding that the conclusion reached in the Whitney case was correct for the reasons therein stated that a "wagon" as exempted under par. (6) should not be construed to operate prospectively so as to include an automobile. In the Poznanovic case this court said that (209 Minn. 382, 296 N. W. 417):

"* * * Legislative policy and the history of § 9447(6) make it clear that the word 'wagon' is used therein with a restricted meaning applying only to that particular type of vehicle. Section 9447 enumerates in the list of exemptions over 50 specific kinds of property affecting many different classes of persons. The subjects of exemption are described in specific, not general terms. For example, the farmer is allowed three cows, ten swine, etc. The exemption statute executes the mandate of Minn. Const. art. 1, § 12, that a reasonable amount of property to be determined by law shall be exempt from any debt or liability. The humane and enlightened purpose of an exemption is to protect a debtor and his family against absolute want by allowing them out of his property some reasonable means of support and education and the maintenance of the decencies and proprieties of life. *The legislative purpose was to adapt the exemptions granted to the circumstances and needs of different classes of debtors.*" (Italics supplied.)

This court in the Poznanovic case recognized that the legislative policy of defining exemptions in specific and not general language has been definitely manifested with respect to the subject matter here under consideration. As was said in that case, we need not decide here whether the words "wagon," "cart," or "dray" may ever be considered to be general in their nature if and when their application is demanded in behalf of the drayman and others engaged in carting and hauling commodities for hire. The plain inference is that the legislative intent was to adopt specific and restricted terms in place of a general one and that by this process a legislative intent was manifested that only the subjects definitely and specifically enumerated were to be exempt. It was suggested in the foregoing case that the provision for the several definitely described subjects of exemption shows that the intention was to include only those mentioned and to exclude all others; that the manifestation of legislative intent by enumeration of the specific subjects which were to be included in the list of exemptions makes applicable the maxim that the expression of one thing is the exclusion of another. See, Cohen v. Gould, 177 Minn. 398, 405, 225 N. W. 435, 438.

The intention of the legislature to deal with the subject by making specific exemptions by restricted language is shown by the amendments of the statute, and this we have recognized by our decisions. We held in the Poznanovic case that the defendant claiming the exemption of the Buick coupe automobile, a farmer, was not a mechanic, miner, or other person within the meaning of par. (8) of the exemption statute which provided for the exemption of the "tools and instruments of a mechanic, miner, or other person, used and kept for the purpose of carrying on his trade." The defendant therein being neither a mechanic nor a miner, this court said that he was entitled to claim such exemption only if a farmer is an "other person." The construction applied was that the term "other person" as used in par. (8), which referred to the tools and instruments of any mechanic, miner, or other person, used and kept for the purpose of carrying on his trade, did not include a farmer.

Reference was made in the Poznanovic case to Bevitt v. Crandall, 19 Wis. 581, in which case a farmer claimed that he came under the term "other person." The Wisconsin exemption statute contained separate sections which were substantially the same as pars. (6) and (8) of our exemption statute. The Wisconsin court held that a farmer was not an "other person" within the meaning of the statute and pointed out that a farmer's exemptions are provided in the section which corresponds to our par. (6). This court concluded in the Poznanovic case that such a construction seems to accord with the manifest legislative intent of making specific exemption for each class of debtors according to their needs and circumstances. We believe that case to be controlling here and that the specific exemptions set forth in par. (6) apply to the class of debtors who are engaged in agricultural pursuits, generally classified as farmers.

As was said by the court below in its memorandum made a part of its order denying defendant's motion, "The spirit and policy of M. S. 550.37 is clearly recognized in the decisions in this jurisdiction," citing Grimes v. Bryne, *supra;* Ames v. Martin, 6 Wis. 361.

It requires but a casual examination of par. (6) in order to determine that all of the items enumerated therein generally relate to the occupation of farming. It is important to note therein that an exemption is granted for a farm tractor in lieu of a span of horses. It seems only fair therefore to conclude that the exemption for horses contemplated by the legislature comprehends that class of horses which is used in place of and in the same manner as a farmer's tractor.

■ Based upon the particular facts disclosed by the record in this case, we conclude that the court below was correct in denying defendant's claim that the horse was exempt property, it being undisputed that defendant's main occupation was that of a contractor. The order of the court below entered November 15, 1955, construing the exemption statute is hereby affirmed. In view of the sheriff's return on execution made November 17, 1955, being returned wholly unsatisfied and the garnishee's foreclosure sale of the mare as stablekeeper under M. S. A. 514.18 to 514.22 being completed March 7, 1956, with-

out redemption, it is now in order for the trial court to discharge all garnishment proceedings herein, and it is so ordered.

Affirmed subject to present order of dismissal of all garnishment proceedings.