LAURA McPEEK GILES v. FRANK P. LUKER.[1]

May 21, 1943.

No. 33,433.

[1]Reported in 9 N. W. (2d) 716.

*Wilson & Blethen* and *Arthur H. Ogle,* for appellant.

*Moonan & Moonan* and *H. G. Dressel,* for respondent.

LORING, JUSTICE.

Plaintiff, the owner of a 6.3-acre shore property known as Tetonka Park, near Waterville, Minnesota, brought this suit for an injunction to prevent defendant, the owner of contiguous property, from interfering with plaintiff's right to have gravel hauled by truck over a wagon road across defendant's property, over which road plaintiff had a permanent right of way for traveling "by foot or wagon." In his answer defendant asked for an injunction forbidding plaintiff to truck such gravel over the road, on the theory that the trucking operation would do irreparable damage to the road and to defendant's summer resort business. The trial court found that plaintiff had no right to truck gravel over the road and granted an injunction forbidding it. From an order denying plaintiff's motion for a new trial, she brings the case here on appeal.

Originally plaintiff's acreage and that of defendant belonged to one Andrews, who operated a large pavilion and amusement park on the property now owned by plaintiff. January 15, 1900, Andrews conveyed the property now owned by defendant to one Hermsmeyer, with the reservation—"excepting and reserving to the grantors, their heirs, executors and assigns a permanent right of way for traveling by foot or wagon, over the wagon road as now laid out across the south part of said Lot 1, to and from the

place known as Tetonka Park." Defendant ultimately acquired title subject to this reservation. March 26, 1902, Andrews conveyed the premises now owned by plaintiff to one Case, together with—"the right to use as a highway the road or driveway now located upon that portion of said Lot 1, lying east of the tract heretofore conveyed, and extending from the east line of said Lot 1, to the east line of property described and conveyed and just north of the lake shore and railroad spur track." Similar language has been used in the various mesne conveyances through which plaintiff ultimately acquired her title. Plaintiff has no access to a public highway other than the road described in her deed. This road has been used for over 40 years by people going to and from the Tetonka Park property. At times large political gatherings have been held there, as well as the entertainments given by large musical organizations. The defendant purchased his property in 1919 and since that time has used it partly for farming and partly as a summer resort. Adjacent to the road in question he has built some four or five summer cottages to rent to vacationists during the summer season. Among other things, he has developed a large gravel pit on the northern part of his land and has hauled out much of the gravel over part of this roadway.

In the spring of 1941 plaintiff opened up a pit of high-grade gravel on the southwestern part of her land and began hauling it over the roadway referred to. Some of it she sold to the city of Waterville, which hauled it away from her pit over the road in question. Defendant threatened to prevent the trucks from using the road. As a consequence of defendant's threat, plaintiff has been unable to sell any of her gravel.

■ The consequences of defendant's threat to stop the gravel trucks were such as to justify a court of equity in entertaining a suit for an injunction.

■ The trial court held that the right of way reserved by Andrews in his conveyance to defendant's predecessor in interest, by which the owner of the dominant estate now owned by plaintiff had the right to travel the road "by foot or wagon," was not broad

enough to permit plaintiff to use trucks for hauling gravel. With this view we are not in accord. As we read the reservation, the word "wagon" was used in the generic sense and is broad enough to cover the vehicular transportation in common use by this generation which has replaced wagons, buggies, and the like. Swensen v. Marino, 306 Mass. 582, 29 N. E. (2d) 15, 130 A. L. R. 763, 767. In fact, the tenor of the easement has received a practical construction to that effect, except as to gravel trucks, by the owners of both dominant and servient estates. Indeed, it appears to us a mere accident of nomenclature that motorized vehicles bear the names they do. They could as well have been called "motor carriages" or "motor wagons" as "automobiles" and "trucks." In Strycker v. Richardson, 77 Pa. Sup. 252, 255, where the terms of the easement covered "teams and wagons," the term "wagons" was held to be generic and to include other vehicles "by whatever name they may be called." In Diocese of Trenton v. Toman, 74 N. J. Eq. 702, 711, 70 A. 606, 607, a "carriageway" or "wagon or carriage alley" was held to include any vehicle on wheels.

In our own case of Poznanovic v. Maki, 209 Minn. 379, 383, 296 N. W. 415, we held that an automobile was not a "wagon" within the terms of our exemption statute. Minn. St. 1941, § 550.37(6), (Mason St. 1941 Supp. § 9447[6]). The history of that statute, which formerly used the word "vehicle," indicated to our minds that the legislature changed it to read "wagon, cart or dray," with an intent to restrict the tenor of the statute to the vehicles so strictly specified. The case of Clarkin v. Duggan, 292 Mass. 263, 265, 198 N. E. 170, 171, cited by defendant, involved an easement which authorized travel "with teams *only*."

We regard the use of trucks as within the terms of the easement here under consideration.

■ The general rule is that a right of way arising by grant and not by prescription which is not restricted by the terms of the grant is available for the reasonable uses to which the dominant estate may be devoted. Swensen v. Marino, 306 Mass. 582, 29 N. E. (2d) 15, 130 A. L. R. 763, 766.

As said in Crosier v. Shack, 213 Mass. 253, 256, 100 N. E. 607, 609, L. R. A. 1918A, 260, 262:

"Any use reasonably necessary to the full enjoyment of his premises may be made of the way by him [referring to the owner of the dominant estate]. And the use of it may vary from time to time with what is necessary to constitute full enjoyment of his premises."

Where, as here, the easement was created by grant, it may include every reasonable use to which the dominant estate may be devoted and is not limited to the purposes for which the dominant estate was used at the time the way was created. Mahon v. Tully, 245 Mass. 571, 139 N. E. 797. See also Abbott v. Butler, 59 N. H. 317, and Shreve v. Mathis, 63 N. J. Eq. 170, 178, 52 A. 234, 238, where the court said:

"Nor is the owner of the way limited to its use by himself *in propria persona.* The way belongs to him as his property. All persons having occasion may, with his permission, transact business with him by passing to and fro over the way."

■ "The right of the easement owner, and the right of the land owner, are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both." Minto v. Salem W. L. & P. Co. 120 Or. 202, 212, 250 P. 722, 725; Olcott v. Thompson, 59 N. H. 154, 156, 47 Am. R. 184. Therefore, while the plaintiff here has a right to have her gravel hauled over the road reserved to her property, she must exercise that right reasonably, without doing unnecessary injury to defendant's property or business. His principal objection to the haulage of gravel is that it will create dust, to the detriment of the use of his summer cottages, and that the noise of the trucks, running nights as well as days, will keep the lessees of such cottages from sleeping. He also suggests some danger to children from the passage of the trucks, a hazard common to all properties adjacent to highways.

On this record, the order granting an injunction against plaintiff must be modified so as not to restrain her from trucking gravel at other times than during the sleeping hours of the nights of the summer resort season. Such use of the road by her should be conditioned upon her either sprinkling it immediately adjacent to defendant's cottages or treating it with chemicals so as to minimize the dust created by this haulage. The speed of the trucks past such cottages should be limited to a reasonable one. She should also be required to repair all damage done to the road by the gravel trucks. On the other hand, plaintiff is entitled to an injunction restraining defendant from interfering with the haulage of her gravel under the conditions above set forth.

The case is remanded to the trial court with instructions to enter a decree only enjoining plaintiff from having her gravel hauled between ten p. m. and six a. m. of each day from May 15 to September 15 of each year, but requiring her to minimize the dust on the road immediately adjacent to defendant's cottages by sprinkling or chemical treatment and to repair all damage done to the road by the gravel trucks. The speed of such trucks in the immediate vicinity of defendant's cottages should not exceed eight miles per hour. Defendant is to be enjoined from interfering with such use of the road by plaintiff or her customers.

The order for decree is so modified.

MR. CHIEF JUSTICE HENRY M. GALLAGHER took no part in the consideration or decision of this case.