# Richmond

JACK WAGONER, JR. v. JACK'S CREEK COAL CORPORATION.

January 20, 1958.

Record No. 4756.

Present, Eggleston, Spratley, Buchanan, Whittle and Snead, JJ.

The opinion states the case.

*George C. Sutherland (S. H. & George C. Sutherland,* on brief), for the plaintiff in error.

C. H. Combs (Combs, Combs & Street, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Jack Wagoner, Jr., instituted this action seeking compensation from the defendant, Jack's Creek Coal Corporation, for hauling coal in trucks over a road on the plaintiff's land, by reason of which he alleged that the defendant had benefited to the extent of $4,500, which it should pay to the plaintiff. At the conclusion of plaintiff's evidence the court struck it out, judgment was entered for the defendant and the plaintiff appeals.

Most of the evidence offered by the plaintiff related to the damage to the road caused by the hauling and was irrelevant to the issue presented. His motion for judgment was in assumpsit for the use and occupation of his land. His counsel stated in the argument on the defendant's motion to strike that he was suing in assumpsit on the ground that the defendant "had no right to pass over the land to haul the coal and [plaintiff] was not suing for the damages as a result of the failure of defendant to properly maintain the road." The court then struck out the evidence of the plaintiff on the grounds that the defendant had a right to use the road by an express reservation in the deed through which the plaintiff derived title to his land, as well as by an implied reservation due to the fact that the road was the only outlet from other lands owned by the plaintiff's predecessor in title.

The land owned by the plaintiff and the land from which the coal was hauled by the defendant were parts of one tract of steep, mountainous land formerly owned by A. J. Charles and lying on both sides of Jack's Creek, in Buchanan county. In 1902 A. J. Charles and wife conveyed to their son, J. C. Charles, 200 acres on the lower end of this tract and on both sides of the creek. This deed was made subject to "the following exception to wit:

"A wagon Haul Road with meanders of the creek through said tract of land for the benefit of those that are settled & may settle on said creek an— hereby excepted by the parties of the first part."*

This 200-acre tract was conveyed in 1935 by J. C. Charles to his

---

* The copy of the deed in evidence has the words "A wagon Horse Road" but the plaintiff stipulated that it should read "A wagon Haul Road."

daughter, Maude Johnson, who in 1946 conveyed the surface to Roland Lee, reserving the coal and other minerals together with all necessary rights and privileges for mining and removing them. By deed of November 29, 1946, Lee conveyed this surface subject to the same mining rights and privileges to the plaintiff, Wagoner.

In 1906 A. J. Charles conveyed the balance of his land on Jack's Creek and lying above the 200 acres, one tract to his daughter, Gusta Elswick, and the other to his son, Miles Charles. It was stipulated that the defendant was the owner of the coal on these two tracts "with the right to mine and remove same."

The plaintiff testified that in September, 1954, the defendant began hauling over the road in question coal mined from the plaintiff's land and from the Elswick and Miles Charles tracts, and so used the road until February 15, 1956, when it ceased mining. It was stipulated that in that period the defendant hauled 32,754 tons of coal from its two tracts and if the plaintiff was entitled to recover it should be at the rate of three cents a ton.

The 200 acres, the surface of which was owned by the plaintiff, was originally the homeplace of A. J. Charles, plaintiff's predecessor in title, and plaintiff testified that for 25 years or more before he purchased people had passed up and down over a road through his land which was partly in the creek; that there was a fence along the edge of the creek and after the plaintiff got his deed he moved this fence back from the creek and widened and leveled the road all the way through his land to make it passable for automobiles and permitted all the people living above him to use it for any purpose; that the defendant, during the time it used the road, scraped it from the head of Jack's Creek out to the State highway and the only complaint about its use made by the plaintiff was in December, 1954, and that was directed only to defendant's failure to keep it in repair.

Plaintiff testified that during the time the defendant was using the road there was a sawmill in operation on the Miles Charles tract above his land, begun in 1949, and logs and lumber were hauled over this road in connection with that operation, and plaintiff himself had driven a truck and had hauled logs and lumber to and from this sawmill over this road. Plaintiff conceded that the road used by the defendant was the only road from the Elswick and Miles Charles tracts down Jack's Creek to the State highway.

Other witnesses for the plaintiff testified to the effect that plaintiff and some other residents improved the road so cars could get from

the mouth of Jack's Creek to and through plaintiff's land; that as long as they could remember there had been a road up Jack's Creek over the land now owned by the plaintiff, open to the public generally, but it was mostly in the creek bed and could not be used in times of high water; that in places below plaintiff's land the defendant had raised the road up out of the creek and improved it, and that it was a better road after the sawmill and mining operators began using it than it was before. One of the plaintiff's witnesses testified that he moved to the Miles Charles tract in 1915; that the road over the plaintiff's land was partly in the creek until plaintiff moved his fence back and improved the road; that while he lived there he recalled no objection being made to the use of the road.

As noted, the road over plaintiff's land, excepted in the deed to his predecessor in title, was "a wagon Haul Road." The plaintiff in his brief does not base his claim for recovery upon the fact that the defendant used trucks and not a wagon for hauling the coal. In his oral argument he stated that he was not complaining of the type of vehicles used by the defendant, and in his brief he said that "(t)his is a suit based on the benefit the defendant derived from the use and occupation of plaintiff's road" and "not a suit for damages to real estate."

Plaintiff has thus apparently accepted the principle, which is well supported by the authorities, that where a right of way is granted or reserved it may be used for any purpose to which the land accommodated thereby may reasonably be devoted unless the grant or reservation specifically limits the use, and the beneficiary of the right is not restricted to the type of vehicles or mode of travel existing at the time the easement was created, but he may use the way for any vehicle which his reasonable needs may require in the development of his estate. *McDonnell* v. *Sheets*, 234 Iowa 1148, 15 N. W. 2d 252, 156 A. L. R. 1043; *Matteodo* v. *Capaldi*, 48 R. I. 312, 138 A. 38, 53 A. L. R. 550; *Swensen* v. *Marino*, 306 Mass. 582, 29 N. E. 2d 15, 130 A. L. R. 763; *Giles* v. *Luker*, 215 Minn. 256, 9 N. W. 2d 716; *Sakansky* v. *Wein*, 86 N. H. 337, 169 A. 1; *Bernards* v. *Link*, 199 Ore. 579, 248 P. 2d 341, 263 P. 2d 794; Annotations, 156 A. L. R. 1050, 130 A. L. R. 768, 53 A. L. R. 553; 17A Am. Jur., Easements, § 119, p. 727.

The easement created by the plaintiff's predecessor was a road to be used for hauling. It was described as a wagon haul road, not as a limitation on the method but to emphasize its purpose, the wagon

being the most efficient vehicle for hauling known in that community at the time of the grant. Hauling by truck, the modern substitute for the wagon, did not violate the terms of the easement.

■ Plaintiff's main argument against the defendant's right to use the road is that the defendant is not a "settler" and the road was excepted "for the benefit of those that are settled & may settle on said creek." According to Webster the verb "settle" includes, among many others, the meaning "(t)o fix one's residence; to establish a dwelling place or home, as in a new city or county." Webster's New Int. Dict., 2d ed., p. 2293. In common parlance it suggests the pioneers, as in the inclusive phrase "early settlers of Virginia." The plaintiff argues that the defendant is a cooperation which cannot live on the land and hence cannot have the benefit of the easement.

The evidence does not indicate whether there were others than A. J. Charles living on Jack's Creek who were settlers within these definitions when A. J. Charles made this exception and reservation in his deed of 1902. But after he made that deed he still owned the Gusta Elswick and Miles Charles tracts, and it cannot be doubted that he meant by the exception to retain a right of way over the J. C. Charles tract for the benefit of his remaining land, because that was the only way to get out from that land to the highway. This easement was a valuable property right appurtenant to his remaining land and when he conveyed this remaining land to Gusta Elswick and Miles Charles in 1906, he conveyed that right to them along with the land, and when the coal on these tracts was conveyed by or through them to the defendant, that right also passed to the defendant as part of its coal estate. Code § 55-50. Such was, as the evidence shows, the understanding of the owners of both the servient and the dominant estates, for as long as the witnesses could remember not only they but others who owned property or had other reason to travel up and down this creek used this road over the plaintiff's land without objection by him or any prior owner. Clearly no one understood, and the exception cannot fairly be interpreted now to mean, that the use of this road was, or was ever intended to be, limited personally to those who were settlers or pioneers in this area, and thus bring it about that those who succeeded to their property on this creek above the land of the plaintiff could not use it or sell it because there would be no way out to the public road. In its narrowest construction the exception provided a haul road over plain-

tiff's land for the benefit of A. J. Charles, then a settler, and those claiming under him.

The plaintiff also contends that he is entitled to compensation because the road used by the defendant was not the same road as excepted from the 1902 deed. He argues that it was excepted as a road "with the meanders of the creek," and that meant it was to stay in the creek. At the same time he states in his brief that the evidence is as clear as witnesses could make it "that plaintiff moved this road out of the creek and built it on dry land." That being true, the plaintiff cannot now be heard to say that the defendant cannot use it on the location so selected by the plaintiff without objection from any source. The defendant is entitled to use a road over the plaintiff's land which is not definitely described as to width and specific location in the deed. The plaintiff having fixed a location which corresponds generally to the description in the deed and which was agreeable to the owners of the easement, it would be a strange result if the defendant thereby lost the right to use it. Even where there has been a definite location of an easement, it may be changed with the express or implied consent of the persons interested. Such consent may be implied from the acts and acquiescence of the parties, and an estoppel to claim a former location to be the true one arises from acquiescence in the change. 17A Am. Jur., Easements, § 103, pp. 713-14.

We hold that the defendant had a right under the exception in the deed of 1902 from A. J. Charles to haul coal over the road on plaintiff's land. It is therefore unnecessary to consider the additional holding of the trial court that the defendant also had an implied right of way. As noted, no issue was presented as to whether defendant had damaged plaintiff's land by exercising its right of way in an improper manner. The trial court properly struck out the plaintiff's evidence because it did not support the claim he asserted. The judgment appealed from is accordingly

*Affirmed.*