## FAIRFAX COUNTY PARK AUTHORITY

### V.

## GEORGE ATKISSON, ET AL.

Record No. 930819

June 10, 1994

Present: All the Justices

*Jan L. Brodie, Assistant County Attorney (David P. Bobzien, County Attorney; Karne J. Harwood, Senior Assistant County Attorney,* on briefs), for appellant.

*Scott E. Snyder (Anderson & Corrie,* on brief), for appellees George Atkisson and Carlotta T. Atkisson.

*Bernard E. Goodman (Daniel J. O'Connell; Goodman, Gary & Lickstein,* on brief), for appellees Wexford Associates, Inc., et al.

JUSTICE HASSELL delivered the opinion of the Court.

This appeal involves legal issues relating to the obstruction of an express easement that provides ingress and egress to a family cemetery.

## I.

George B. Atkisson and his wife, Carlotta T. Atkisson, filed their amended bill of complaint against the Fairfax County Park Authority, Wexford Associates, Inc., and 56 owners of lots located

in the Wendover Subdivision, Section III, in Fairfax County. The Atkissons alleged that they own a property interest in an easement that provides ingress and egress to their family cemetery and that the defendants had constructed obstructions that interfere with the Atkissons' use of the easement. The Atkissons sought a declaration of the existence and extent of their easement and compensatory and punitive damages.

The trial court granted the defendants' demurrer to the amended bill. We awarded the Atkissons an appeal from that judgment, and we reversed the judgment by an unpublished order and remanded the case to the trial court for further proceedings. *Atkisson* v. *Wexford Associates, Inc.*, Record No. 890169 (April 26, 1989).

Upon remand, the parties had a trial on the merits. During the trial, the Atkissons nonsuited 38 of the 56 defendants who were lot owners. The case proceeded against the remaining lot owners, Wexford Associates, and the Park Authority.

The chancellor held, among other things, that the Atkissons have an express easement that granted them access to the cemetery. The chancellor established the location of the easement, but decided that he would not grant injunctive relief to the dominant owners because such relief would have required the servient owners to remove improvements such as homes and swimming pools. The chancellor entered a decree requiring that each lot owner, whose lot obstructs the easement, pay $100 to the Atkissons and that Wexford Associates pay the Atkissons $10,000 in punitive damages. Neither the lot owners nor Wexford Associates assigned error to the chancellor's decree. The chancellor also ordered that the Park Authority, at its expense, provide a new easement for the Atkissons on land owned by the Park Authority. We awarded the Park Authority an appeal.

We will state the facts in the light most favorable to the Atkissons, the parties who prevailed in the trial court. In the late 1800s, Mary C. Saunders, Mr. Atkisson's aunt, owned several parcels of land in Fairfax County. She conveyed a 15-acre parcel to Thomas S. Adams, Mr. Atkisson's grandfather, by an 1892 deed. This recorded deed creates an express easement, described as a right-of-way 15 feet wide, over several tracts of land and extending to a public road. The easement allows ingress and egress to the 15-acre parcel.

In 1896, as a result of a decree that had been entered in a partition suit, Mr. Adams received other property referred to as Lot No. 2, that adjoined his 15-acre parcel. The cemetery lot is located on either or both of these properties.

Mr. Adams died intestate, and his heirs inherited both properties, including the easement. By a deed dated March 1978, the heirs of Mr. Adams conveyed their interest in the property to Harold O. Miller, trustee.

In 1977, Charles and Audrey Hawthorne acquired a large parcel of property that was burdened with the easement. The Hawthornes initiated proceedings to obtain the necessary permits and zoning amendments so that the property could be subdivided into residential lots. In 1980, Mr. Atkisson appeared before two public hearings of the Fairfax County Board of Supervisors and contested the Hawthornes' proposed subdivision plan because it interfered with the easement that provided access to the cemetery. The Hawthornes "acknowledged" Mr. Atkisson's concerns regarding the easement.

After the property had been rezoned, the Hawthornes conveyed it to Wexford Associates. After the conveyance, Mr. Atkisson contacted J. Stewart Porter, an officer of Wexford Associates, and inquired what Wexford Associates intended to do regarding the easement on the property. Porter informed Mr. Atkisson that he (Porter) would "be in touch with [him]." Later, Mr. Atkisson met with Porter and a surveyor retained by Wexford Associates. Mr. Atkisson showed them the location of the easement on the property. At that time, Mr. Atkisson thought that Wexford Associates would not obstruct the easement.

Wexford Associates subdivided its property into 40 residential building lots and an unimproved parcel. Wexford Associates conveyed the unimproved parcel to the Park Authority. The easement transverses part of the parcel conveyed to the Park Authority. Wexford Associates made no provision in its deed of dedication or in its recorded plat for the easement.

After construction of the subdivision began, Mr. Atkisson contacted Wexford Associates' employees and sent a letter to Porter inquiring about the easement. Mr. Atkisson also contacted a vice-president of Wexford Associates' title insurance company and retained counsel. Wexford Associates ignored Mr. Atkisson's concerns, continued to develop the property, and constructed houses and other improvements on the easement. The houses were subse-

quently conveyed to the lot owners, who are defendants in this litigation.

## II.

### A.

██ The Park Authority argues that the Atkissons do not own an express easement because the Atkissons "failed to establish at trial that they owned the dominant estate to which the access easement is appurtenant." The Atkissons argue that they presented evidence from which the chancellor could infer that they had an ownership interest in the cemetery that is a part of the dominant estate. We agree with the Atkissons.

██ The decree that was entered as a result of the partition suit of 1896 preserved a portion of land for the family cemetery. The partition decree does not contain a metes and bounds description of the cemetery. A factual dispute arose at trial regarding the location of the cemetery. The chancellor made a factual finding that a portion of the cemetery was located on the 15-acre parcel that had been owned by Mr. Adams. The chancellor's factual finding is supported by the testimony of a surveyor who was able to locate certain monuments in the 1892 deed. As mentioned earlier, this 15-acre parcel was the dominant estate that was served by the express easement created in the 1892 deed from Ms. Saunders to Mr. Adams.

██ The chancellor implicitly found that Mr. Atkisson owned a property interest in the cemetery, and the evidence of record supports the chancellor's finding. David Carr, who was the Atkissons' expert witness, testified that he examined the title to the property involved in this litigation, and the records show that Mr. Atkisson, as an heir of Mr. Adams, owns an interest in the cemetery lot.

The Park Authority also asserts that the Atkissons do not have an interest in the cemetery because, purportedly, a deed dated March 1978 conveyed the 15-acre parcel and Lot No. 2 to Miller as trustee, who subsequently conveyed his interest in the land without exception to a land development company. This company subsequently conveyed its interest in the property to a partnership that subdivided the land and created a subdivision. The Park Authority asserts that the cemetery is now a part of the newly created subdivision and that the Atkissons do not have an ownership

interest in the dominant estate or the appurtenant easement. We disagree.

The 1978 deed states, in relevant part:

> THAT, for and in consideration of the sum of Ten Dollars ($10.00), the receipt of which is hereby acknowledged, the said parties of the first part do hereby grant, bargain, sell and convey unto the party of the second part, in fee simple
> except as to existing cemetery,
> and with General Warranty of Title,/all of that certain lot or parcel of land, with its improvements and appurtenances thereunto belonging, located in the County of Fairfax, Commonwealth of Virginia, and more particularly described in Attachment A attached hereto and made a part hereof.
>
> . . . .
>
> This conveyance is made subject to any and all easements, restrictions and rights of way of record, and existing cemetery.

■ Our review of the language contained in the March 1978 deed reveals that the deed did not convey the cemetery to Miller. Rather, in an interlineation, this deed explicitly exempts the cemetery from the property that was conveyed. Furthermore, the restriction contained in the deed makes it clear that the grantors did not convey the cemetery to the trustee.

### B.

The chancellor's decree stated in part, that "defendant Fairfax County Park Authority shall, at its own expense, provide an easement across Fairfax County Park Authority land to allow access by the [Atkissons] to the cemetery . . . This easement shall be accessible by an ordinary motor vehicle." The Park Authority states that the chancellor's decree changes the location of the easement located on the servient estate, and also encumbers Park Authority property that had never been part of the servient estate. The Park Authority argues that the chancellor lacks the authority to require it to relocate the easement. The Atkissons concur with the Park Authority's argument. Wexford Associates and the lot owners argue, however, that the chancellor's decree is appropriate because it merely requires the relocation of the existing easement.

■ We agree with the Park Authority. In *Eureka Land Co. v. Watts*, 119 Va. 506, 89 S.E. 968 (1916), we considered whether an easement may be relocated without the consent of the owners of the dominant and servient estates. J. Allen Watts, owner of a tract of land, conveyed 40 acres to C. O'Leary. The deed of conveyance reserved "a right of way through the land for ingress, egress and regress, the said way to be of sufficient width and good grade for the passage of vehicles and persons." Subsequently, O'Leary conveyed the land to Eureka Land Company reserving the reserved right-of-way. Eureka Land Company acquired the property with the purpose of subdividing it into residential lots. Eureka Land Company's plan of development ignored the right-of-way and provided a new and different route to be used by the owners of the easement. *Id.* at 507-08, 89 S.E. at 969.

Eureka Land Company argued that there had never been any location of the right-of-way provided for in the deeds and that it had the right to locate the right-of-way subject only to the restriction that the right-of-way be of good grade and of sufficient width. Rejecting Eureka Land Company's contention, we held, "[w]hen a way is once located it cannot be changed by either party without the consent of the other." *Id.* at 509, 89 S.E. at 970. *See also Wagoner v. Jack's Creek Coal Corp.*, 199 Va. 741, 746, 101 S.E.2d 627, 630 (1958).

■ Neither Wexford Associates, the lot owners, nor the Atkissons could have changed the location of the easement that transverses the Park Authority's land without the Park Authority's consent. Likewise, we do not believe that the chancellor has the authority to interfere with the Park Authority's property rights by relocating the express easement on land owned by the Park Authority that was never burdened by the easement. Therefore, we hold that the chancellor did not have the authority to interfere with the Park Authority's property interest in land that was not encumbered by the express easement.[1]

---

[1] Wexford Associates and the lot owners argue that at trial the Park Authority agreed to provide a new easement and that the Park Authority may not retract its purported consent. Our review of the record reveals that, at best, the Park Authority offered to provide the Atkissons permissive access to the cemetery. Wexford Associates and the individual lot owners also argue that "[the Park Authority's] appendix does not contain sufficient material to be considered by [this Court]." We find no merit in this argument.

### III.

■ We will remand this proceeding to the chancellor with the following directions. The chancellor is directed to enter an order requiring that the lot owners and Wexford Associates provide an easement at their expense for the Atkissons, if the lot owners, Wexford Associates, and the Atkissons can agree upon a location and description of the new easement. In the event the litigants are unable to agree, then the chancellor is directed to order that Wexford Associates and the lot owners remove any obstructions that interfere with the Atkissons' use of the express easement.[2] *See Lindsey* v. *Clark*, 193 Va. 522, 527, 69 S.E.2d 342, 345 (1952).

*Affirmed in part,*
*reversed in part,*
*and remanded.*

---

[2] The Park Authority has represented to this Court that it has not obstructed that portion of the easement that transverses its property. Assuming the Park Authority has made no such obstructions, then the Atkissons would not be entitled to any relief against it.