Present: All the Justices

E. CLAIBORNE IRBY, JR., ET AL.
                                    OPINION BY
v. Record No. 971990      JUSTICE LAWRENCE L. KOONTZ, JR.
                                 September 18, 1998
THOMAS C. ROBERTS, JR., ET AL.

            FROM THE CIRCUIT COURT OF MIDDLESEX COUNTY
                        John M. Folkes, Judge


     In this appeal, we consider whether the trial court properly determined that the language of a deed purporting to grant an easement to construct a pier was ambiguous and, thus, failed to transfer the necessary riparian right for that purpose.

                            BACKGROUND

     Paul W. and Jean W. Bounds owned a subdivided peninsula of land, consisting of Lots 68, 69, 70, and 71, known as Stove Point Neck in Middlesex County. The Piankatank River runs along one side of the peninsula, while the other side is bounded by Fishing Bay.

     The Piankatank River and Fishing Bay are tidal, navigable bodies of water. In 1963, the Bounds conveyed Lot 68 and Lot 70 by deed to David M. Bounds, their son, and immediately thereafter conveyed Lot 71 by deed to Jeanne W. Bounds, their daughter. The deeds incorporated a plat of survey, dated July 1, 1963, for the purpose of identifying the boundaries of these lots. The 1963 plat, which was revised in 1966, shows a riprap wall running along the shoreline of Lot 71 on Fishing Bay, as well as two easements on that property. The first easement, indicated by two solid lines, is

identified on the plat as a ten-foot wide right-of-way "to pier." The second easement, indicated by two parallel dashed lines, originating at the riprap wall and extending out into Fishing Bay, is identified on the plat as a thirty-foot wide "easement for pier." The deed to Jeanne Bounds conveyed Lot 71 to her "subject to a right of way along the northern boundary of Lot 71 to Fishing Bay and [a] thirty (30') foot easement along the shore of Fishing Bay for a pier as shown on the aforementioned Plat."  Similarly, the deed to David Bounds conveyed Lot 68 and Lot 70 to him, and included "a right of way along Lot 71 to Fishing Bay, together with a 30' easement as shown on the aforementioned plat <u>for the purpose of constructing a pier</u>." (Emphasis added.)  As indicated on the 1963 plat, the shorelines of Lot 68 and Lot 70 are on the Piankatank River.  Lot 71, located at the end of the peninsula, is bounded by the Piankatank River on one side and Fishing Bay on the opposite side. The plat, as revised in 1966, shows the same easements and identifies them in the same manner as the 1963 plat.

In April 1994, John E. Fitzgerald, a successor in the chain of title from David Bounds, conveyed Lot 68 and Lot 70 by deed to E. Claiborne Irby, Jr. and Michelle M. Irby.  That deed incorporates by reference the revised 1966 plat and expressly references the "non-exclusive perpetual easement 10 feet in width along the northern portion of Lot 71 to Fishing Bay, together with a 30 foot easement for the purpose of construction (sic) a pier."  On December 30,

1994, Mary C. Adams and Sydnor Sikes, Co-Executors of the Estate of John Kirk Adams, a successor in the chain of title from Jeanne Bounds, conveyed Lot 71 by deed to Thomas C. Roberts, Jr. and Norma J. Roberts.  Although that deed makes no express reference to the easements granted in the 1963 deed to David Bounds, the revised 1966 plat is incorporated by reference in a schedule attached to the deed.

On May 24, 1994, the Irbys obtained a permit from the Virginia Marine Resources Commission to construct a five-foot wide, 150-foot long pier extending from the thirty-foot easement on Lot 71 to navigable water in Fishing Bay.  Thereafter, on February 26, 1996, the Roberts filed a bill of complaint against the Irbys seeking an injunction to prohibit them from constructing this pier.[1]  The parties submitted extensive documentary evidence of the chains of title to their respective lots, and a hearing was held June 4, 1997 at which the trial court heard testimony and received additional documentary evidence.

At trial, the Roberts conceded the existence of the ten-foot wide right-of-way along the northern edge of their property as described in the 1963 deed to David Bounds and the incorporated plat.  However, they maintained that the 1963 deed's grant of the

---

[1] In the same suit, the Roberts also sought an apportionment of their riparian rights as against the riparian rights of the owners of Lot 69, which adjoins Lot 71 on Fishing Bay.  That determination is not a subject of the present appeal.

thirty-foot easement "for the purpose of constructing a pier" was insufficient to convey the separate riparian right to construct a pier out to navigable water.[2]  Relying on <u>Thurston v. City of Portsmouth</u>, 205 Va. 909, 915, 140 S.E.2d 678, 682 (1965), the Roberts asserted that in order to retain or convey riparian rights there must be a clear and manifest intention expressed within the deed to accomplish that purpose.  The Roberts further maintained that because this deed made no express mention of "riparian rights," those rights could not be severed by the deed, and the easement merely provided access to the shoreline of Lot 71 between the dashed lines on the plat wherein a pier might have been constructed under a license personal to David Bounds, and this license would not have transferred with title to subsequent owners of the land.

In support of their argument, the Roberts contended at trial, and reassert here, that the description of the thirty-foot wide easement in the 1963 deed to David Bounds provided only for its width along the shoreline, but not its length inland, and that the incorporated plat showed the easement extending from the shoreline below the riprap wall into Fishing Bay.  Consistent with this contention, the Roberts offered as an exhibit a riparian survey prepared at their request showing the thirty-foot wide easement as

---

[2]"Riparian rights" represent five specific rights, including "[t]he right to build a pier or wharf out to navigable water, subject to any regulations of the State."  <u>Taylor v. Commonwealth</u>, 102 Va. 759, 773, 47 S.E. 875, 880 (1904).

4

beginning at the mean low water mark.  Accordingly, the Roberts contended that the deed could not have conveyed the riparian right to construct a pier beginning on the highland.

The Irbys contended that the express intent in the 1963 deed to David Bounds and the incorporated plat was to convey an easement and the riparian right necessary to construct a pier into Fishing Bay. In support of their contention, the Irbys offered their own survey of the peninsula that shows the thirty-foot wide easement extending from the highland of Lot 71 along the original 1963 line of the riprap wall to the shore of Fishing Bay.

On June 30, 1997, the trial court entered a final decree, finding that the "location and extent of the Purported Pier Easement was ambiguous and was not established by a preponderance of the evidence."  The trial court further found that this ambiguity in the 1963 deed to David Bounds was to be construed against the Irbys, as successor-owners of the purported dominant estate.  Accordingly, in the absence of an express grant or other language showing "any clear or manifest intention . . . to sever, exclude or convey any riparian rights," the trial court concluded that no such rights were conveyed, frustrating the purported purpose of the easement to construct a pier and, thus, "[t]he Purported Pier Easement is . . . invalid, null, void and forever vacated."  We awarded the Irbys this appeal.

## DISCUSSION

We first consider whether the trial court properly ruled that the language of the 1963 deed to David Bounds granting "a 30' easement . . . for the purpose of constructing a pier" was ambiguous. We have previously stated that where "[t]he language in the deed . . . is clear, unambiguous, and explicit . . . 'a court called upon to construe such a deed should look no further than the four corners of the instrument under review.'" Langman v. Alumni Association of University of Virginia, 247 Va. 491, 498-99, 442 S.E.2d 669, 674 (1994) (quoting Trailsend Land Co. v. Virginia Holding Corp., 228 Va. 319, 325, 321 S.E.2d 667, 670 (1984)). Furthermore, "[i]f the language is explicit and the intention is thereby free from doubt, such intention is controlling, if not contrary to law or to public policy, and auxiliary rules of construction should not be used." Camp v. Camp, 220 Va. 595, 598, 260 S.E.2d 243, 245 (1979); see also Langman, 247 Va. at 499, 442 S.E.2d at 674 (citing Camp with approval).

In this case, the language of the 1963 deed to David Bounds establishes "a 30' easement . . . for the purpose of constructing a pier." Moreover, the incorporated plat shows the location and extent of the easement by reference to natural and artificial monuments.[3] See Auerbach v. County of Hanover, 252 Va. 410, 414, 478

---

[3]The record contains multiple copies of the 1963 plat. These copies are of varying quality. However, in the copies that are more

6

S.E.2d 100, 102 (1996) (plat incorporated by reference is part of the incorporating instrument). Nothing in the language of this deed is ambiguous or without clear import. Both the deed and the plat plainly manifest the intent of Paul and Jean Bounds, the grantors, to provide an easement along the shoreline of Lot 71 in the location indicated on the plat for the purpose of permitting the owner of Lots 68 and 70, the dominant estate, to construct a pier within the thirty-foot wide easement.

Having determined that the language of the 1963 deed to David Bounds granting the easement is clear and unambiguous, we now consider whether this deed also granted the riparian right to construct a pier out to navigable water. In Grinels v. Daniel, 110 Va. 874, 67 S.E. 534 (1910), we held that a lease to "one-fourth of an acre of land, 'situated on the beach of the river together with a right of way though the lands of [the lessor], to be used by the parties of the second part for the purposes of constructing a steamboat wharf,'" id. at 875, 67 S.E. at 535 (emphasis added), permitted the lessees to construct that wharf consistent with the lessor's riparian rights, but conveyed no other rights of use or occupation of the land and the adjoining water. Id. at 876, 67 S.E. at 535. Rather, in making such a grant, we noted that the landowner

---

distinct, notations concerning artificial monuments relevant to the easements are discernable. Moreover, in at least one of the copies of the 1963 plat, it is clear that one of the lines demarcating the thirty-foot easement extends to the riprap wall.

7

did not "part with his riparian rights to any greater extent than was necessary to enable the lessees to erect the wharf." Id. Implicitly, however, the landowner must part with those rights necessary to fulfill the intent of the grant.

The language of the deed at issue here is strikingly similar to that in the lease at issue in Grinels. As in Grinels, the intent of the grantors here was to permit the grantee to utilize the land within given bounds to build a pier and, thus, to convey the necessary riparian right for that purpose.[4]

Nor do we agree with the Roberts that Thurston has modified the rationale of Grinels to require use of the express term "riparian rights," or other similar language, in order to effect such a grant. To the contrary, Thurston relied upon Waverly, &c. Co. v. White, 97 Va. 176, 33 S.E. 534 (1899), for the principle that the intention to retain riparian rights must be clear and manifest on the face of the deed. Thurston, 205 Va. at 912-13, 140 S.E.2d at 680-81. In Waverly, deeds that granted title to land above the high water mark and made no express mention of "riparian rights" were held to convey such rights absent an express reservation. Waverly, 97 Va. at 180, 33 S.E. at 536. Thus, Waverly, and subsequently Grinels, stand for

---

[4]We recognize that "pier" and "wharf" are not congruent terms; however, the construction of an artificial mooring out to or along navigable waters requires the same riparian right regardless of the intended use of the structure. See Taylor, 102 Va. at 773, 47 S.E. at 880.

8

the principle that the intent to transfer a "riparian right" may be express within the language of a grant without the use of that specific term.

Accordingly, we hold that the intent of Paul and Jean Bounds to convey the riparian right to construct a pier is sufficiently clear in the language of the deed to render unnecessary the inclusion of a specific reference to "riparian rights." Thus, by the 1963 deed to David Bounds, Paul and Jean Bounds granted an easement to construct a pier with the necessary riparian right to fulfill that purpose. Grinels, 110 Va. at 876, 67 S.E. at 535.

The Roberts further contend that even if the deed conveyed the right to construct the pier, the length of that pier is limited to the area demarcated by the dashed lines on the plat, which they contend are shown as extending no more than 57 feet from the riprap wall into Fishing Bay. We disagree. Nothing in the deed suggests that the dashed lines on the incorporated plat were intended to restrict the length of the pier into Fishing Bay. Rather, it is evident that these lines are merely directional, showing the boundaries of the thirty-foot wide easement within which the pier could be constructed.

Moreover, it is not necessary for the deed to specify the length of the pier. In the absence of any express restriction in the deed, the law of this Commonwealth resolves the issue regarding

9

the pier's length.  See Code § 28.2-1200 et seq. (permitting Virginia Marine Resources Commission to regulate commercial and private use of submerged lands including the construction of piers out to navigable waters); see also Taylor, 102 Va. at 773, 47 S.E. at 880 (the right to construct a pier extends out to navigable water subject to the regulations of the state).

For these reasons, we will reverse the judgment of the trial court and enter final judgment for the Irbys.[5]

Reversed and final judgment.

---

[5]Because of our resolution of the main issue in this appeal, we need not address appellants' other assignments of error.