## CIRCUIT COURT OF FAIRFAX COUNTY

Wessynton Homes
Association, Inc.

v.

Patrick S. Burke
and Jenny M. Burke

October 5, 2009

Case No. CH-2005-3441

BY JUDGE ROBERT J. SMITH

This matter comes before the court on the demurrer of the plaintiffs to the amended counterclaim of the defendants. For the reasons that follow, the demurrer is sustained in part and overruled in part.

*Procedural History*

Plaintiffs Wessynton Homes Association, Inc. (hereafter WHA) brought this action in July 2005 seeking declaratory judgment interpreting an easement. Defendants Patrick S. Burke and Jenny M. Burke answered and filed a cross-bill seeking declaratory judgment regarding claimed riparian rights or reformation of the easement.

The case was stayed so the parties could attempt to settle. The parties reached a conditional settlement agreement in September 2006. The condition of the settlement agreement, government approval of the Burkes' plan to build a canal, did not materialize, and the settlement failed.

In November 2008, the parties agreed to lift the stay and litigation began. The Burkes filed a new response, named the Amended Counterclaim, after the stay was lifted.

The amended counterclaim added a new declaratory judgment count seeking a declaration that the easement grants them the right to drive pilings and construct a dock. The amended counterclaim includes the initial count for reformation and renamed the earlier declaratory judgment count as a riparian rights count.

This demurrer to all three counts followed.

*Facts*

In 1968, WHA granted to one Richard O. Keys an easement to excavate a channel from the Keys' property (lot 30) over land owned by WHA (Parcel G) to water contained within the boundaries of Parcel G. The easement states, in pertinent part:

> WHA agrees to grant to Richard Owen Keys an easement from the main drainage channel to Lots 29 and 30 over and across a 30 foot wide strip of land located 15 foot on either side of the projection of the common lot line of Lots 29 and 30 in a southerly direction to the edge of the main drainage channel for the purpose of excavating a channel from the main drainage channel to Lots 29 and 30. In addition, WHA agrees to give Richard Owen Keys the right to construct bulkheading along the access route from the main drainage channel to Lots 29 and 30 of the type to be constructed along the south side of the main drainage channel or an equivalent approved by WHA.

The Burkes allege they are the successors in interest to Keys. The Burkes recorded the easement in the land records in April 2005.

In 2005, WHA and the Burkes began discussions regarding the Burkes' desire to exercise the rights they claim under the easement. These rights include excavating portions of WHA's land to access a privately owned canal within Parcel G. As noted above in the procedural history, the excavation cannot proceed as to do so would violate various regulatory provisions.

*Analysis*

"When ruling on a demurrer, in contrast to ruling on a motion for summary judgment, a court is not permitted to decide the merits of a claim but only may decide whether a plaintiff's factual allegations are sufficient to state a cause of action. *Almy v. Grisham*, 273 Va. 68, 76, 639 S.E.2d 182 (2007). A demurrer presents an issue of law, not of fact. *Id.*; Va. Code § 8.01-273.

*Count I*

The demurrer to Count I is overruled.

Count I seeks declaratory relief. Circuit courts have the authority to issue declaratory judgments. Va. Code § 8.01-184. The purpose of declaratory judgment is:

> To afford relief from the uncertainty and insecurity attendant upon controversies over legal rights, without requiring one of the parties interested so to invade the rights asserted by the other as to entitle him to maintain an ordinary action therefor. It is to be liberally interpreted and administered with a view to making the courts more serviceable to the people.

Va. Code § 8.01-191.

In their amended counterclaim, the Burkes request declaratory relief, specifically, that the easement grants them boat access from their property to the channel. WHA asserts that the easement grants the Burkes the right to dig a canal and nothing more.

The analysis of Count I begins with an assessment of the ambiguity or lack of ambiguity of the easement. Insofar as the easement describes what is to be done (dredging a canal) it is not ambiguous. The intent of the parties, however, is not as clear. Did the parties intend to grant the right to excavate a canal or did the parties intend to grant boating access, as asserted by the plaintiffs?

Here, the grant of an easement to excavate a canal is not ambiguous. However, through no fault of either party, the easement, unambiguously granted though it is, cannot be realized due to changes in environmental law.

"A grant or reservation of a way or easement in general terms ordinarily will be construed as creating a general right-of-way capable of use for all reasonable purposes." (footnote omitted). "Reasonable use," as contemplated by this rule, includes not only the use required at the time of the grant or

reservation, but also the right to use the way for any purposes connected with the use to which the dominant tenement may naturally and reasonably be devoted. 25 Am. Jur. 2d, *Easements and Licenses in Real Property*, § 76, "Ways, generally."

It does not make sense to read the easement as granting the right to excavate a canal and only the right to excavate a canal. I cannot conclude that the intent of the parties was to bargain only for the right to excavate a canal and nothing more. Why would the Burkes' predecessors in interest want the right to excavate a canal without more? It seems to me that the intent of the Burkes' predecessors in interest was to gain access to the main channel. The value of lot 30 increases substantially because of the access to the main channel. While lot 30 would certainly be valuable just by being close to water, access to water makes it even more valuable. I agree with the Burkes that the purpose of the easement was to grant access to the main channel; the right to excavate a canal was the method by which the parties contemplated that access. The fact that the Burkes may not now lawfully excavate the canal does not terminate the easement.

In *Wagoner v. Jack's Creek Coal Corp.*, 199 Va. 741, 744, 101 S.E.2d 627 (1958), the Virginia Supreme Court stated: "Where a right of way is granted or reserved it may be used for any purpose to which the land accommodated thereby may reasonably be devoted unless the grant or reservation specifically limits the use, and the beneficiary of the right is not restricted to the type of vehicles or mode of travel existing at the time the easement was created, but he may use the way for any vehicle which his reasonable needs may require in the development of his estate."

In the instant case, the easement did not limit the grant, only the method. The grant intended by the parties was access to the water. The method, as opposed to the right, perceived by the parties was the excavation of the canal. Because the excavation cannot now lawfully be accomplished, the Burkes are permitted to use any reasonable method to accomplish the right. Building a dock to realize the intent of the parties is a reasonable method, at least at this point in the litigation. "A servitude should be interpreted to give effect to the intention of the parties ascertained from the language used in the instrument, or the circumstances surrounding creation of the servitude, and to carry out the purpose for which it was created." *Restatement of Property 3d*, "Servitudes," § 4.1(1).

"Except as limited by the terms of the servitude determined under § 4.1, the holder of an easement or profit as defined in § 1.2 is entitled to use the servient estate in a manner that is reasonably necessary for the convenient enjoyment of the servitude. The manner, frequency, and intensity of the use

*may change over time to take advantage of developments in technology* and to accommodate normal development of the dominant estate or enterprise benefited by the servitude. Unless authorized by the terms of the servitude, the holder is not entitled to cause unreasonable damage to the servient estate or interfere unreasonably with its enjoyment." *Restatement of Property 3rd,* "Servitudes," § 4.10(c) (emphasis added).

Here the technology has changed in the sense that the canal may not now lawfully be built. If the law did not account for such changes, then the Burkes' easement would be of no value.

For the foregoing reasons, the demurrer to Count I is overruled.

## Count II

The demurrer to Count II is sustained without leave to amend.

Count II alleges a cause of action for reformation. The Burkes allege that the change in environmental regulations is a "mutual mistake," thus triggering the equitable remedy of reformation.

It is well settled that there are only two instances in which a court may reform a contract: mutual mistake and unilateral mistake of one party accompanied by fraud or other inequitable conduct by the other party. *Larchmont Properties v. Cooperman,* 195 Va. 784, 80 S.E.2d 733 (1954).

Neither party has alleged fraud, so, if reformation is to lie, it must do so under the rules of mutual mistake. There has been no mutual mistake in this case.

The plaintiffs allege in their counterclaim that there has been a mutual mistake as to a future fact. Plaintiffs cite the case of *Seaboard Ice Co. v. Lee,* 199 Va. 243, 99 S.E.2d 721 (1957).

In *Seaboard Ice,* the victim, Lee, had been involved in a vehicular accident. Lee signed a contractual release whereby he would give up all claims arising from the accident. The trial court found that both parties entered that contract with a misunderstanding as to the full extent of Lee's injuries. The decision was upheld on appeal.

Even if *Seaboard Ice* does stand for the proposition that reformation will apply where there has been a mutual mistake as to a future event (and I am not convinced that it does), the case is inapplicable. In *Seaboard Ice,* the mutual mistake was to an event, the collision, and the situation, Lee's medical condition, that already, existed. The parties simply assessed Lee's injuries incorrectly.

In this case, the situation (the excavation of the canal) had not already occurred. The excavation of the canal was an event to occur in the future. *Seaboard Ice* would be applicable if the Burkes, without knowledge of the

appropriate environmental regulations, had already excavated the canal. Then both parties could point to the mutual mistake, *viz.* the existence of environmental regulations prohibiting the excavation of the canal.

Finding no mutual mistake, the demurrer to Count II is sustained without leave to amend.

## Count III

The demurrer to Count III is overruled.

Count III alleges that the Burkes possess riparian rights as to the water on Parcel G.

The term "riparian" is used to describe a landowner who owns land bordering upon, bounded by, fronting upon, abutting or adjacent and contiguous to and in contact with a body of water. Am. Jur., *Waters*, § 30.

In *Taylor v. Commonwealth*, 102 Va. 759, 773, 47 S.E. 875 (1904), the rights of a riparian owner were delineated as follows: (1) the right to be and remain a riparian proprietor and to enjoy the natural advantages thereby conferred upon the land by its adjacency to the water, (2) the right of access to the water, including a right of way to and from the navigable part, (3) the right to build a pier or wharf out to navigable water, subject to any regulations of the state, (4) the right to accretions or alluvium, and (5) the right to make a reasonable use of the water as it flows past or laves the land.

It is generally held that riparian rights may be separated from the ownership of the land to which they are appurtenant, either by a grant of such rights to another or by a reservation thereof in the conveyance of the land. *Thurston v. City of Portsmouth*, 205 Va. 909, 914, 140 S.E.2d 678 (1965), *citing* 56 Am. Jur., *Waters*, § 288, p. 710.

WHA asserts several arguments that the Burkes cannot support a claim for riparian rights, including but not limited to: (1) the Burkes' property is not riparian land; (2) if the easement grants any riparian rights, those rights would be limited to the express terms of the easement, and (3) the approval of construction plans is a condition precedent to any riparian rights the Burkes may have.

The first issue is whether the Burkes' lot is riparian land. The language of the Amended Counterclaim makes it apparent that the Burkes' property is not riparian land. The Amended Counterclaim states that the agreement provides for "boat access from parcel 30 to the Creek *within* parcel G." (Am. Cclm. § 3.) The Amended Counterclaim also refers to "dredging a 30 foot wide *strip of land* from their property to the creek". (Am. Cclm. § 5.) These allegations make it clear that there is land between the water source and the Burkes' lot. Riparian land must be contiguous to and abut a water source. Va.

Code Ann. §§ 62.1-104(5), (6). The Burkes' property is not contiguous to, nor does it abut a water source.

The next issue is whether the Burkes' easement through Parcel G to the water source conveyed with it riparian rights. It is generally held in Virginia that riparian rights may be separated from the ownership of the land to which they are appurtenant, either by a grant of such rights to another or by a reservation thereof in the conveyance of the land. *Thurston*, 205 Va. at 914.

In *Grinels v. Daniel*, 110 Va. 874, 875, 67 S.E. 534 (1904), the Supreme Court of Virginia held that a lease to "one-fourth of an acre of land, situated on the beach of the river together with a right of way though the lands of the lessor, to be used by the parties for the purposes of constructing a steamboat wharf," permitted the lessees to construct that wharf consistent with the lessor's riparian rights. However, the court found that it conveyed no other rights of use or occupation of the land and the adjoining water. *Id.* at 876. The Court found that the landowner did not "part with his riparian rights to any greater extent than was necessary to enable the lessees to erect the wharf." *Id.*

In *Irby v. Roberts*, 256 Va. 324, 327, 504 S.E.2d 841 (1998), the Supreme Court of Virginia held that a deed granting "a thirty-foot easement 'for the purpose of constructing a pier' " clearly and unambiguously granted an easement over the shoreline of the servient estate for the purpose of constructing a pier. The deed also granted the riparian right to construct a pier out to navigable water. *Id.* at 330. The court found the intent of the parties to convey the riparian right to construct a pier was sufficiently clear in the language of the deed to render unnecessary the inclusion of a specific reference to "riparian rights." *Id.* The landowner must part with those rights necessary to fulfill the intent of the grant. *Id.*

In *Irby*, there was an explicit conveyance of a right to construct a pier. It is logical that an explicit conveyance of the right to construct a pier would also necessarily convey the riparian right to access to and from the navigable section of the water. The Virginia Supreme Court found a conveyance of riparian rights without their express mention due to the clear and absolute nature of the intent of the easement. The intent of the parties to convey riparian rights in the case before us is not as clear because there is no similar explicit reference to a pier or a dock in the easement.

The intent of the easement to give the Burkes a right to boat access can be plausibly inferred at this stage of the litigation. The riparian rights that are necessary to fulfill the intent of the document can be conveyed without express mention. Therefore the conveyance of the riparian rights necessary to effectuate boat access could plausibly be inferred as well.

Therefore, according to the reasons stated above the demurrer to Count III is overruled.