Betty SWANSON, Respondent,

v.

**PARKWAY ESTATES TOWNHOUSE ASSOCIATION, Appellant.**

No. C0–97–380.

Court of Appeals of Minnesota.

Aug. 26, 1997.

William F. Huefner, Scott M. Lepak, Barna, Guzy & Steffen, Ltd., Minneapolis, for respondent.

Todd R. Iliff, Kevin W. DeVore, Iliff & Associates, P.A., Edina, for appellant.

Considered and decided by NORTON, P.J., and SCHUMACHER and WILLIS, JJ.

## OPINION

SCHUMACHER, Judge.

Appellant Parkway Estates Townhouse Association challenges the trial court's decision that the governing declaration requires the association to maintain sliding glass doors. We affirm.

## FACTS

This case involves a dispute between the association and one of its townhouse owners, respondent Betty Swanson. The association is governed by a document entitled Declaration of Covenants, Conditions and Restrictions (declaration). The controversy arose when Swanson noticed the exterior wood frame and threshold of her glass patio door were rotting. The most practical and affordable manner to repair the frame and threshold required replacing the entire patio door. She requested that the association replace the patio door, frame, and threshold. The association refused, stating that the declaration exempted the association from maintaining glass doors. Swanson then contracted to have a new patio door, frame, and threshold installed and brought a conciliation court action for reimbursement. The conciliation court, and then the district court on removal, ruled in her favor. The association appeals.

## ISSUES

1. Did the trial court err by interpreting the declaration to require the association to replace Swanson's door and threshold?

2. Is Swanson entitled to bad faith attorney fees?

## ANALYSIS

The operative documents that govern a townhome association constitute a contract between the association and its individual members. *See Chapman Place Ass'n v. Prokasky,* 507 N.W.2d 858, 863 (Minn.App. 1993) (rights of townhome association members governed by bylaws, documents, and real property law), *review denied* (Minn. Jan. 24, 1994); *accord Trailside Townhome Ass'n v. Acierno,* 880 P.2d 1197, 1202–03 (Colo. 1994) (operative documents could create contractual obligations). A court's primary role in interpreting contracts is to "ascertain and give effect to the intention of the parties." *Metropolitan Sports Facilities Comm'n v. General Mills, Inc.,* 470 N.W.2d 118, 122–23 (Minn.1991). Construction of a contract presents a question of law, unless an ambiguity exists. *Stowell v. Cloquet Co-op Credit Union,* 557 N.W.2d 567, 571 (Minn.1997) (citing *Hibbing Educ. Ass'n v. Public Employment Relations Bd.,* 369 N.W.2d 527, 529 (Minn.1985)). Ambiguity exists when the language of a written document is reasonably susceptible to more than one meaning. *Trondson v. Janikula,* 458 N.W.2d 679, 681 (Minn.1990) (citing *Metro Office Parks Co. v. Control Data Corp.,* 295 Minn. 348, 351, 205 N.W.2d 121, 123 (1973)). "[W]here the language is ambiguous resort may be had to extrinsic evidence * * * [and][c]onstruction then becomes a question of fact * * *." *Empire State Bank v. Devereaux,* 402 N.W.2d 584, 587 (Minn.App.1987). In such a case, the factfinder's construction of the contract and consideration of the extrinsic evidence is reviewed under the clearly erroneous standard, *id.,* and this court views the evidence which is most favorable to the trial court's findings. *Trondson,* 458 N.W.2d at 682 (citing *Caroga Realty Co. v. Tapper,* 274 Minn. 164, 169, 143 N.W.2d 215, 220 (1966)).

Both parties recognize that the resolution of this case turns on the interpretation of the rights and obligations flowing from the townhouse declaration. The controlling section of the declaration states:

The Association shall provide exterior maintenance upon each Lot which is subject to assessment hereunder, or as follows: paint, repair, replacement and care of roofs, gutters, downspouts, exterior building surfaces, and other exterior improvements. Such exterior maintenance shall not include glass surfaces.

Declaration, art. IV. The plain language of the contract does not reveal the parties intentions as to whether a glass patio door is to be considered a "glass surface" or an "exterior surface/improvement." According to the declaration, if the patio door is a "glass surface," the association is exempted from maintaining it. If the patio door is an "exterior surface/improvement," however, the association is obligated to maintain it.

The trial court properly determined that article IV of the declaration was ambiguous. To interpret article IV, the court reviewed and weighed extrinsic evidence from both the association and Swanson. The court found persuasive the New Owner Information Packet, a document that the association distributed to all new townhouse owners. The New Owner Packet explains that "routine exterior maintenance and repair *(except glass damage or damage caused by the Lot owner)* is provided [to the members]." (Emphasis added). It also states that the association's directors

> researched several attorneys with expertise in townhouse associations for the purpose of establishing policy regarding where the burden of cost responsibility lies for certain maintenance issues, based on our legal documents. * * * *[T]he Board has reaffirmed its position of general exterior maintenance falling to the assoc[iation]; repairs for damage due to wilful or negligent actions falling to the responsible party.*

New Owner Information Packet (emphasis added).

Based on these excerpts, the trial court found that the Packet interprets the declaration to exempt the association from maintaining exterior glass surfaces only when the glass damage is caused by willful or negligent actions of the owner. In other words, if the glass surface is damaged due to some reason besides the owner's act or negligence, the association must maintain it. In the present case, Swanson did nothing to cause the wood around her door to deteriorate. The association, therefore, is not exempted and must maintain it. The evidence, when considered in the light most favorable to the trial court's findings, supports the trial court's decision that the association must pay Swanson for the cost of repairing her patio door. The trial court correctly applied the same reasoning and result to the glass windows.

■ Swanson seeks bad faith attorney fees under Minn.Stat. § 549.21, subd. 2 (1996). Swanson points to the low value of the judgment and the association's appeals from conciliation and trial court decisions as proof that the association sought to harass her. Swanson's contentions are not supported by the record. *See Uselman v. Uselman*, 464 N.W.2d 130, 141 (Minn.1990) (abuse of discretion to award attorney fees for harassment when no evidence in record). The association sought to avoid new costs associated with maintaining patio doors. While its argument was not persuasive, it was not frivolous or harassing. We therefore decline to award bad faith attorney fees.

### DECISION

We conclude that the trial court correctly interpreted the townhouse declaration to require the association to reimburse Swanson for the costs she incurred repairing her patio door. The association's appeal was not brought in bad faith.

**Affirmed.**