THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Village West Horizontal Property Regime, Respondent,
v.
International Sales and Marketing Group, Appellant.
 
 
 

Appeal From Beaufort County
Jackson V. Gregory, Circuit Court Judge

Unpublished Opinion No. 2007-UP-111
Submitted February 1, 2007  Filed March 7, 2007

AFFIRMED

 
 
 
Jack D. Simrill, of Hilton Head Island, for Appellant.  
Edward E. Bullard and Sonja N. Friedman, both of Hilton Head Island, for Respondent.
 
 
 

PER CURIAM:  International Sales and Marketing Group appeals the circuit courts order granting Village West Horizontal Property Regime summary judgment.  We affirm.[1]
FACTS
The Village West Horizontal Property Regime consists of three phases.  Phases I and II contain the Schooner, Clipper, Galleon, and Flagship buildings.  Phase III contains the Spinnaker Building.  International Sales and Marketing Group owned Unit 14 in the Spinnaker Building.
The misapplication of synthetic stucco in Phases I and II caused water intrusion in those buildings.  Consequently, the regime filed suit against the developer.  The suit was settled, and the regime paid court costs and attorneys fees from the settlement.  The remaining proceeds were not enough to repair the buildings.  Because of this deficiency, the regimes board of directors included the cost of repairing these buildings in its annual assessment against all unit owners in Phases I, II, and III.  
On March 21, 2005, the regime filed suit against International for its failure to pay this assessment.  During the pendency of the action, International sold Unit 14 and paid the assessment in order to consummate the transaction.  However, International refused to stipulate to the dismissal of the regimes suit.  The regime then moved for summary judgment, asking the circuit court to dismiss the action and award attorneys fees.  
In response, International moved to amend its answer, asserting counterclaims against the regime for return of its payment and unfair or deceptive trade practices.  International contended the assessment was improper because the Spinnaker Building was not water damaged and therefore not the subject of repair.  International also argued the regimes by-laws prohibited the assessment.  
The circuit court held a hearing and granted the regime summary judgment, holding the regimes by-laws permitted the assessment.  International moved for reconsideration, which the circuit court denied.  
STANDARD OF REVIEW
An appellate court reviews the grant of summary judgment under the same standard applied by the circuit court.  David v. McLeod Regl Med. Ctr., 367 S.C. 242, 247, 626 S.E.2d 1, 3 (2006).  The circuit court should grant summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.  Rule 56(c), SCRCP; Byrd v. City of Hartsville, 365 S.C. 650, 656, 620 S.E.2d 76, 79 (2005).  In determining whether any triable issues of fact exist, the evidence and all reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party.  Law v. S.C. Dept of Corr., 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006).  
LAW/ANALYSIS
I.  The Regimes By-Laws
International argues the circuit court erred in granting summary judgment to the regime because the regimes by-laws prohibited the assessment.  Specifically, International contends Articles IX and X of the by-laws require the regime to assess only the unit owners whose units are damaged.  Alternatively, International maintains the by-laws are ambiguous.  We disagree.
The operative documents that govern a horizontal property regime constitute a contract between the association and its individual members.  Swanson v. Parkway Estates Townhouse Assn, 567 N.W.2d 767, 768 (Minn. Ct. App. 1997); see also Reyhani v. Stone Creek Cove Condo. II Horizontal Prop. Regime, 329 S.C. 206, 211-13, 494 S.E.2d 465, 468-69 (Ct. App. 1997) (applying principles of contract law to interpret the operative documents of a horizontal property regime).  The interpretation of a clear and unambiguous agreement is a question of law for the court.  Stribling v. Stribling, 369 S.C. 400, 404, 632 S.E.2d 291, 293 (Ct. App. 2006). 
In construing a contract, the primary objective is to ascertain and give effect to the intention of the parties.  D.A. Davis Constr. Co., v. Palmetto Props., Inc., 281 S.C. 415, 418, 315 S.E.2d 370, 372 (1984).  The parties intention should first be determined from the language of the contract.  Schulmeyer v. State Farm Fire & Cas. Co., 353 S.C. 491, 495, 579 S.E.2d 132, 134 (2003).  In general, if the contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used, and the terms are to be taken and understood in their plain, ordinary, and popular sense.  Ingram v. Kaseys Assocs., 340 S.C. 98, 110, 531 S.E.2d 287, 293 (2000).  

Article IX of the regimes by-laws provides, in pertinent part:
 
In the event of casualty loss or damage to the Property, the [regimes] Board of Directors shall be responsible for applying the proceeds of all casualty insurance to the repair or reconstruction of the Property in accordance with the provisions of this ARTICLE IX . . . .  If less than two-thirds (2/3) of the Property is destroyed or substantially damaged, then such Property shall be repaired in the following manner:
. . . .
(3)  If the insurance proceeds paid to the Board are insufficient to cover the cost of reconstruction, the deficiency shall be paid as a special assessment by the Unit Owners whose units are being reconstructed or repaired in proportion to the damage done to their respective Units.  
 
Article X of the regimes by-laws reads, in relevant part:
 
(2)  Insurance proceeds paid on account of loss or damage to less than all of the Units, when the damage is to be restored, shall be held [by the Regimes Board of Directors] for the benefit of Unit Owners of the damaged Units . . . in proportion to the costs of repairing each damaged unit.  
 

Using these provisions, International asserts the regime could not require unit owners in the Spinnaker Building to pay for reconstruction and repair costs with respect to the other buildings in the regime.  We disagree.
Articles IX and X of the regimes by-laws are not applicable to the present case.  A
contract is read as a whole document so that one may not, by pointing out a single sentence or clause, create an ambiguity.  S. Atl. Fin. Servs., Inc. v. Middleton, 356 S.C. 444, 447, 590 S.E.2d 27, 29 (2003).  In this case, the opening paragraph of Article IX refers to casualty loss or damage to the Property . . . and the proceeds of all casualty insurance.  The remainder of Article IX guides the board in how to apply these proceeds and what procedure to follow if the proceeds are deficient.  The clear, unambiguous intent of this provision is to provide the board guidance in the event of a casualty loss or damage caused by a casualty.  The damage at issue was the result of negligent construction so that the casualty provisions are not implicated.
Moreover, we agree that other provisions within the regimes master deed and by-laws specifically allow the assessment.  Article V, Section (e) of the master deed reads, in part:

The obligations of all Unit owners with regard to assessments for common expenses and the maintenance and repair of the individual Units shall be as provided in the By-Laws of the [Regime] . . . .

Article VII, Section 6(c) of the by-laws provides, in part:
 
All maintenance, repair and replacement to the common elements as defined in the Master Deed, the painting and decorating of the exterior doors and exterior window sash and the washing of exterior glass shall be made by the [Regimes] Board [of Directors] . . . and shall be charged to the Unit Owners as a common expense . . . .
 

Article VIII, Section A(1) of the master deed defines the regimes common elements, which include the foundations, roofs, perimeter walls, [and] walls and partitions separating units . . . .  
In this case, the parties do not dispute the relevant repairs involved application of stucco on the walls of the buildings.  Accordingly, the regimes master deed and by-laws clearly provide for the assessment of all unit owners for construction defects with respect to any of the buildings within the regime.  Additionally, this language complies with statutory law and the general purpose behind horizontal property regimes.  See S.C. Code Ann. § 27-31-190 (Rev. 2007) (The co-owners of the apartments are bound to contribute pro rata . . . toward the expenses of administration and of maintenance and repair of the general common elements.).
II.  Genuine Issues of Material Fact
International maintains the circuit court erred in granting summary judgment because several genuine issues of material fact exist for trial.  Specifically, International contends the following factual issues should be submitted to a jury:  (1) whether the assessment would be used to make repairs to the Spinnaker Building; (2) whether Articles IX and X of the by-laws prohibited the regimes use of the assessment to make repairs on the buildings; and (3) whether the repair and reconstruction would be made to individual units or common elements.  We disagree.
In light of our holding above, the issue of whether the assessment would be used to make repairs on the Spinnaker Building is immaterial.  Additionally, we have held the by-laws are clear and unambiguous.  Consequently, we have decided the issue of whether Articles IX and X prohibit the assessment as a matter of law.  Moreover, International produced no evidence repairs would be made to individual units within the regime.  In fact, International argued the assessment would be used to pay for water damage caused by the use of synthetic stucco on the buildings.  Therefore, we hold the circuit court properly found no genuine issues of material fact existed for trial.
III.  Timing of Summary Judgment
International argues the circuit court erred by prematurely granting summary judgment.  International did not make this argument until it filed its Rule 59, SCRCP, motion.  A party cannot for the first time raise an issue by way of a Rule 59(e) motion which could have been raised at trial.  Patterson v. Reid, 318 S.C. 183, 185, 456 S.E.2d 436, 437 (Ct. App. 1995).  Therefore, International did not preserve this issue for our review.
IV.  The Business Judgment Rule
As an alternative sustaining ground, the regime contends the business judgment rule prevents Internationals counterclaims.  In response, International contends this issue is not preserved because the circuit court failed to rule on the issue.  We hold the regime properly preserved this issue and agree with the regime on the merits.
Under the present rules, a respondentthe winner in the lower courtmay raise on appeal any additional reasons the appellate court should affirm the lower courts ruling, regardless of whether those reasons have been presented to or ruled on by the lower court.  IOn, L.L.C. v. Town of Mt. Pleasant, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000).  Accordingly, the regime may raise the issue of whether the business judgment rule prohibits Internationals counterclaims on appeal.
The regime is a non-profit corporation.  Under the business judgment rule, a court will not review the business judgment of a corporate governing board when it acts within its authority, and it acts without corrupt motives and in good faith.  Dockside Assn, Inc. v. Detyens, 291 S.C. 214, 217, 352 S.E.2d 714, 716 (Ct. App. 1987) (applying the business judgment rule to the assessment decision of a horizontal property regimes board of directors) affd, 294 S.C. 86, 362 S.E.2d 874 (1987).  International produced no evidence of bad faith or the failure of the regime to act within its scope of authority in levying and applying the assessment.  Accordingly, we hold the business judgment rule prevents Internationals counterclaims.
V.  Attorneys Fees
International contends the circuit court erred in awarding attorneys fees to the regime for proceedings occurring after payment of the assessment.  International did not raise nor did it obtain a ruling from the circuit court on this issue.  Therefore, International failed to preserve it for our review.  See Wilder Corp. v. Wilke, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ([A]n issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.).  
Based on all of the foregoing, the decision of the circuit court is 
 AFFIRMED.
 HEARN, C.J., GOOLSBY, and STILWELL, JJ., concur.

[1]  We decide this case without oral argument pursuant to Rule 215, SCACR.