*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1994**

Souhsiung Jack Chiu,
Appellant,

vs.

Timbershore Home Owners' Association, defendant and third party plaintiff,
Respondent,

vs.

New Horizon Homes, Inc.,
Third Party Defendant.

**Filed June 29, 2015
Reversed and remanded
Larkin, Judge**

Dakota County District Court
File No. 19HA-CV-14-1026

Patrick K. Horan, Edina, Minnesota (for appellant)

Gerald H. Bren, Michael A. Breen, Fisher Bren & Sheridan LLP, Minneapolis, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Reilly, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**LARKIN**, Judge

Respondent home owners' association possesses a "full and complete" easement to use a water pipe that runs under appellant townhome owner's unit. Appellant sued respondent for negligence and trespass after the water pipe leaked and flooded his unit. The district court granted summary judgment for respondent, concluding that respondent did not have a duty to repair the interior of appellant's unit and that respondent was not liable for trespass because it did not intentionally cause the water pipe to leak. Because respondent has a common-law duty as an easement holder and there is a genuine issue of material fact regarding whether respondent breached its duty, and because appellant's trespass claims do not require proof that respondent intentionally caused the water pipe to leak and flood appellant's unit, we reverse and remand.

## FACTS

Appellant Souhsiung Jack Chiu owns a townhome in Eagan that is part of respondent Timbershore Home Owners' Association (Timbershore). Timbershore has an easement for a water pipe that runs under Chiu's townhome and serves an adjacent unit. Chiu has not lived in the townhome since 1999, and at some point, he turned off the water supply to the townhome. On October 11, 2011, Chiu's neighbor notified Chiu that there were signs of a water problem in Chiu's townhome. Chiu immediately went to the townhome and observed "quite a few inches" of standing water. He verified that the water supply to his townhome was still off by testing the faucets.

On the morning of October 12, Chiu called Mike O'Brien, Timbershore's vice president, and notified him of the leak. O'Brien suggested the possibility of a broken pipe. At approximately 2:00 p.m., O'Brien visited Chiu's townhome and observed water infiltration in the unit. Chiu told O'Brien, "It's not my water. . . . I think it's [the] association's. It's not my department. It's [the] association's department and I need help. I don't know what to do." O'Brien "indicated there was nothing he could do."

The source of the leak turned out to be the water pipe that runs under Chiu's townhome and serves the adjacent unit. The water supply to that pipe was not turned off until October 14. Thus, the leakage continued unabated for approximately two days after Timbershore had actual knowledge of the leak and the water intrusion in Chiu's townhome. Timbershore repaired the water pipe on October 14, but it refused to compensate Chiu for any resulting water damage to the interior of his townhome, which has been estimated at $49,006.

Chiu sued Timbershore for negligence and trespass. Timbershore moved for summary judgment, arguing that Chiu's claims fail because "he cannot establish that [Timbershore] breached a duty to [him] or that any intentional act by [Timbershore] caused a trespass to [his] land or chattels." Timbershore's submissions in support of summary judgment included a 1971 "declaration of covenants, restrictions, and easements" (declaration); a 2004 memorandum from the association regarding its "sewer system maintenance and repair policy"; and an advisory from the association labeled "Very Important!!!"

The original parties to the declaration were Timbershore and New Horizon Homes Inc., the constructor and original owner of the Timbershore townhomes.[1] The declaration contains the following provision:

> Section 4.    Sewer and Water Easement.    Whereas, [New Horizon Homes] has, or may, construct units with certain sewer and water pipes . . . .
> NOW THEREFORE, [New Horizon Homes] does hereby declare that [Timbershore] and each dwelling unit and the lot occupied thereby upon which [New Horizon Homes] has or does hereafter build is granted full and complete easement and right to use such pipes and facilities.  Full right of access for maintenance and repair at reasonable hours is hereby granted each dominant parcel and [Timbershore]. Expense of repair or maintenance shall be common expenses of [Timbershore].

The declaration is silent regarding Timbershore's responsibility, or lack thereof, for maintenance and repairs of individual townhome interiors.  However, the 2004 memorandum states that Timbershore's obligation "for maintenance and repair of the main sewer system is limited to failure of the system, only," that Timbershore "shall not pay for any damage to the townhome unit caused by failure of the main sewer system," and that "[a]ny such damage to the townhome unit is the homeowner's responsibility." The "Very Important" advisory instructs owners to "[k]eep the outside water pipes from freezing and your home from flooding" and states that "[i]nside damage to your home from broken pipes, is the homeowners' responsibility.  The association does not cover damage on the insides of your homes. . . . [T]hat is why you must have a deductible on your [homeowner's] insurance that you feel comfortable with."

---

[1] Timbershore named New Horizon Homes as a third-party defendant, but New Horizon Homes is not a party to this appeal.

4

The district court granted Timbershore's motion for summary judgment. The district court concluded that Timbershore's duty regarding the water and sewer pipes "is defined exclusively by the [d]eclaration," that Timbershore "has no duty to repair the interior of [Chiu's] unit," and that "absent such a duty, [Chiu's] negligence claims fail as a matter of law." The district court also concluded that Chiu's trespass claims fail because trespass is an intentional tort and it could find "no act that set in motion a wrongful intrusion upon [Chiu's] property."

Chiu appeals.

## D E C I S I O N

"A motion for summary judgment shall be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that either party is entitled to a judgment as a matter of law." *Fabio v. Bellomo*, 504 N.W.2d 758, 761 (Minn. 1993). "When hearing motions for . . . summary judgment, [district] courts are not asked to weigh evidence, determine credibility, resolve factual disputes, and decide the merits of a plaintiff's case. Instead, a court's duty . . . is simply to determine whether genuine issues of material fact exist, not how such issues should be resolved." *Foley v. WCCO Television, Inc.*, 449 N.W.2d 497, 506 (Minn. App. 1989) (quotation and emphasis omitted), *review denied* (Minn. Feb. 9, 1990), *cert. denied*, 497 U.S. 1038 (1990). A genuine issue of fact exists if reasonable persons might draw different conclusions based on the evidence. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70 (Minn. 1997). "A party need not show *substantial evidence* to withstand summary judgment. Instead,

5

summary judgment is inappropriate if the nonmoving party has the burden of proof on an issue and presents *sufficient evidence* to permit reasonable persons to draw different conclusions." *Schroeder v. St. Louis Cnty.*, 708 N.W.2d 497, 507 (Minn. 2006).

Appellate courts "review a district court's summary judgment decision de novo. In doing so, we determine whether the district court properly applied the law and whether there are genuine issues of material fact that preclude summary judgment." *Riverview Muir Doran, LLC v. JADT Dev. Grp., LLC*, 790 N.W.2d 167, 170 (Minn. 2010) (citation omitted). "[T]he reviewing court must view the evidence in the light most favorable to the party against whom judgment was granted." *Fabio*, 504 N.W.2d at 761. "Because summary judgment is a blunt instrument, its use should be limited to cases in which it is perfectly clear that no issue of fact is involved." *Foley*, 449 N.W.2d at 506 (quotations omitted).

Before we proceed with our analysis, we note that this case is an anomaly in the realm of Minnesota caselaw regarding an association's liability for damages to an individual unit in the association. Claims for damages in such cases are usually based on a contract theory and the governing declaration, or on statutes. *See, e.g.*, *Jensen-Re P'ship v. Superior Shores Lakehome Ass'n*, 681 N.W.2d 42, 43 (Minn. App. 2004) (condominium owner alleged that association breached contract and duties established under the Minnesota Uniform Condominium Act by refusing to repair sloped floor in owner's unit), *review denied* (Minn. Sept. 21, 2004); *Busby v. Groves Homeowners Ass'n*, No. C6-99-2204, 2000 WL 1239760, at *1-2 (Minn. App. Sept. 5, 2000) (owner alleged that association breached contract by failing to make plumbing repairs); *Swanson*

6

*v. Parkway Estates Townhouse Ass'n*, 567 N.W.2d 767, 768 (Minn. App. 1997) (townhome owner alleged that declaration required association to reimburse her for costs incurred repairing patio door). In those cases, the declarations often addressed the responsibility of the association and unit owners to maintain and repair common areas and unit interiors. *See, e.g.*, *Busby*, 2000 WL 1239760, at *2 (noting that occupancy agreement between unit owner and association "required the unit owner to repair and maintain interior plumbing"); *Swanson*, 567 N.W.2d at 768-69 (noting that townhouse declaration stated that the association "shall provide exterior maintenance upon each Lot which is subject to assessment hereunder"); *see also Gallery Tower Condo. Ass'n v. Carlson*, No. A10-1403, 2011 WL 2302701, at *4 (Minn. App. June 13, 2011) (noting that condominium association's declaration "provides that the association 'shall be responsible for necessary maintenance and repair of the common elements'"), *review denied* (Minn. Aug. 24, 2011).

Here, the declaration is silent regarding the association's responsibility for maintenance and repairs of individual units. And there is no claim that the responsibility is governed by statute. *See, e.g.*, Minn. Stat. § 515B.3-102(a)(6) (2014) (stating that, subject to the declaration's provisions, the association has the power to "regulate the use, maintenance, repair, replacement, and modification of the common elements and the units"); § 515B.3-107(a) (2014) (stating that, unless the declaration provides otherwise, "the association is responsible for the maintenance, repair and replacement of the common elements, and each unit owner is responsible for the maintenance, repair and

replacement of the unit owner's unit"). Having noted the unique circumstances in this case, we proceed with our analysis of Chiu's negligence and trespass claims.

**I.**

We first address the district court's grant of summary judgment for Timbershore on Chiu's negligence claims. Chiu's complaint sets forth two negligence claims. One alleges that Timbershore negligently maintained the water pipe, and the other alleges that Timbershore negligently refused to turn off the water supply to the leaking pipe. To prevail on a negligence claim, Chiu must prove: "(1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) that the breach of the duty of care was a proximate cause of the injury." *Domagala v. Rolland*, 805 N.W.2d 14, 22 (Minn. 2011).

The existence of a duty "is a threshold question because in the absence of a legal duty, the negligence claim fails." *Id.* (quotation omitted). Whether a duty exists "is a legal question to be determined by the judge, not the jury." *Balder v. Haley*, 399 N.W.2d 77, 81 (Minn. 1987). "A duty is an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Vaughn v. Nw. Airlines, Inc.*, 558 N.W.2d 736, 742 (Minn. 1997). "Whether a duty is imposed depends . . . on the relationship of the parties and the foreseeable risk involved." *Erickson v. Curtis Inv. Co.*, 447 N.W.2d 165, 168-69 (Minn. 1989). "The existence of a duty of care is a question of law that [appellate courts] review de novo." *Domagala*, 805 N.W.2d at 22.

The district court's determination that Timbershore's "duty relative to the water and sewer pipe . . . is defined exclusively by the [d]eclaration" is not supported by the

record or caselaw. The declaration does not expressly obligate Timbershore to conform to any particular standard of conduct. It simply grants Timbershore "full and complete easement and right to use" the sewer and water pipes, including "[f]ull right of access for maintenance and repair." In fact, Chiu does not allege that Timbershore violated a duty under the declaration. He argues that Timbershore violated its common-law duty, as an easement holder, to maintain the easement and keep it in good repair. Caselaw supports Chiu's position.

In *Matter v. Nelson*, this court recognized that:

> Under the common law of easements, the [easement holder is] responsible for any damage resulting from a failure to maintain or repair an easement, absent any separate agreement. Furthermore, the owner of a dominant estate is liable for damages resulting from a misuse of the easement.

478 N.W.2d 211, 214 n.1 (Minn. App. 1991) (citation omitted). The *Nelson* court cited what is now an outdated section of the Corpus Juris Secundum on easements as support. *Id.* (citing 28 C.J.S. *Easements* §§ 93, 94(c) (1941)). However, the current C.J.S. sets forth the same rules. *See* 28A C.J.S. *Easements* §§ 229 ("The owner of an easement is responsible for any damage resulting from a failure to maintain or repair the easement, absent any separate agreement."), 214 ("The owner of the dominant estate is liable for damages resulting from a misuser of the easement . . . .") (2008).

Moreover, the *Nelson* court's statement regarding the common-law duty of an easement holder is consistent with Minnesota Supreme Court caselaw addressing the obligations of an easement holder. For example, the supreme court has stated that an easement holder "must exercise [the] right [to use the easement] reasonably, without

9

doing unnecessary injury to [the servient landowner's] property or business." *Giles v. Luker*, 215 Minn. 256, 260, 9 N.W.2d 716, 718 (1943). The supreme court has also stated that "[i]f an easement holder expressly agrees to pay for damages to the servient property as a result of exercising the rights under the easement grant, then the easement holder is liable for such damages without regard to negligence." *Bergh & Misson Farms, Inc. v. Great Lakes Transmission Co.*, 565 N.W.2d 23, 26 (Minn. 1997) (quotation omitted). That statement indicates that an action for damages resulting from the exercise of easement rights may be based on negligence so long as the easement does not expressly define the easement holder's liability for such damages. *See id.* at 27 (stating that "[b]ecause the right-of-way agreement specifically defines Great Lakes' rights and responsibilities with respect to accessing the pipeline easement," "the only real issue for trial was the amount of damages Great Lakes was required to pay for damage . . . resulting from its exercise of its rights under the right-of-way agreement").

The easement here does not expressly require Timbershore to pay for damages resulting from the exercise of its easement rights. Nor does the declaration contain exculpatory language limiting Timbershore's liability for damages resulting from the exercise of those rights. *See Schlobohm v. Spa Petite, Inc.*, 326 N.W.2d 920, 922-23 (Minn. 1982) (stating that the parties to a contract may use exculpatory clauses to "protect themselves against liability resulting from their own negligence"). Moreover, Timbershore does not contend that its 2004 memorandum and "Very Important" advisory regarding the townhome owners' responsibility for interior damage are enforceable exculpatory clauses, noting that they are not "exculpatory clauses per se." Instead,

10

Timbershore contends that "the memoranda reflect the risk allocation intended by the [d]eclaration."

"The operative documents that govern a townhome association constitute a contract between the association and its individual members" and "[w]here the language is ambiguous resort may be had to extrinsic evidence." *Swanson*, 567 N.W.2d at 768 (quotation omitted). But "[w]here contractual language is unambiguous on its face, no extrinsic evidence is required to interpret a contract's terms." *Finke v. State*, 521 N.W.2d 371, 372 (Minn. App. 1994), *review denied* (Minn. Oct. 27, 1994). Timbershore does not argue that the declaration is ambiguous or offer legal argument or authority explaining why it is appropriate to consider extrinsic evidence of the parties' intent regarding the declaration. We therefore do not consider whether the memorandum or advisory limit Timbershore's liability.

In sum, caselaw recognizes that an easement holder has a common-law duty to maintain and repair the easement and not to misuse the easement. Here, the easement granted in the declaration triggers that common-law duty, and it provides a basis for Chiu's negligence claims.[2] The district court therefore erred by concluding that Chiu's negligence claims fail for lack of a duty.

---

[2] We note that this is not a case in which a contract creates a duty that does not otherwise exist and, therefore, in which recovery for breach of that duty is limited to a contract claim. *See Glorvigen v. Cirrus Design Corp.*, 816 N.W.2d 572, 584 (Minn. 2012) (stating that, in a case where sales contract created duty to provide flight lessons, party was precluded from recovering in tort for breach of that duty because "[w]here a party cannot prove that the duty at issue arose independent of a contract, Minnesota law precludes that party from recovering in negligence based upon breach of that duty"

Our conclusion that Timbershore has a common-law duty as an easement holder to maintain and repair the easement and not to misuse the easement does not end our analysis of Chiu's negligence claims. Timbershore argues that summary judgment is appropriate because Chiu did not offer evidence that Timbershore "breached a standard of care with respect to the maintenance of the water pipe." *See Winkler v. Magnuson*, 539 N.W.2d 821, 828 (Minn. App. 1995) (stating that this court will affirm summary judgment "if it can be sustained on any ground"), *review denied* (Minn. Feb. 13, 1996). "[T]he nature and character of reasonable care depends upon the circumstances of the individual case." *Otto v. City of St. Paul*, 460 N.W.2d 359, 361 (Minn. App. 1990). "The question becomes what was the character and extent of the [defendant's] duty under these circumstances." *Id.*

Timbershore stated, in response to an interrogatory posed by Chiu, that "no testing or maintenance procedures were completed on the water supply lines under [Chiu's] unit prior to October 2011." The record shows that the water pipe under Chiu's townhome was installed before Chiu purchased the townhome in 1973. The record also suggests that Timbershore was aware of the risk of leaking water pipes and the potential damage to townhome interiors, as shown by its "Very Important!!!" advisory on the subject. Furthermore, it is undisputed that after Chiu notified Timbershore of the water infiltration caused by Timbershore's water pipe, Timbershore allowed the water leak to continue unabated for two days. Viewing the evidence in the light most favorable to Chiu, there is

(quotation and alterations omitted)). Here, the declaration creates the easement, but the relevant duty exists at common law.

12

a genuine issue of material fact regarding whether Timbershore breached its common-law duty to maintain and repair its easement and not to misuse its easement.

## II.

We next address the district court's grant of summary judgment in favor of Timbershore on Chiu's trespass claims. Chiu's complaint sets forth two trespass claims. One is based on trespass to his land (i.e., his townhome), and the other is based on trespass to his chattels (i.e., his personal property). The district court's analysis regarding Chiu's trespass claims is as follows:

> The Court also concludes that [Chiu's] trespass claims are intentional torts and that the alleged trespasser must have an objective intent to do an act that sets in motion a wrongful intrusion upon [Chiu's] property. Here, the Court can find no act that set in motion a wrongful intrusion upon [Chiu's] property.

The Restatement (Second) of Torts sets forth several ways that a defendant may commit trespass, many of which have been cited with approval by the Minnesota Supreme Court. *See Victor v. Sell*, 301 Minn. 309, 313-14, 222 N.W.2d 337, 340 (1974) (citing Restatement (Second) of Torts §§ 158, 160, 161 (1965)). For instance, section 158 describes liability for intentional intrusions on land as follows:

> One is subject to liability to another for trespass, irrespective of whether he thereby causes harm to any legally protected interest of the other, if he intentionally
> (a) enters land in the possession of the other, or causes a thing or a third person to do so, or
> . . . .
> (c) fails to remove from the land a thing which he is under a duty to remove.

13

Restatement (Second) of Torts § 158. Under subsection (a), the requisite intentional act occurs at the time of entry (i.e., the defendant intentionally enters or intentionally causes a thing to enter). But under subsection (c), the requisite intentional act occurs after entry: an intentional failure to remove a thing constitutes a trespass, so long as the defendant had a duty to remove the thing. Under the plain language of subsection (c), the original placement of the thing need not be intentional.

Like section 158(c), section 161 provides that a defendant's failure to remove a thing may constitute trespass. Specifically, section 161 provides: "A trespass may be committed by the continued presence on the land of a structure, chattel, or other thing which the actor has tortiously placed there, whether or not the actor has the ability to remove it." Restatement (Second) of Torts § 161. As used in section 161, "tortious" means "conduct, whether of act or omission, [that] is of such a character as to subject the actor to liability under the principles of the law of Torts." Restatement (Second) of Torts § 161 cmt. a. Under that definition, a "tortious" placement could be based on a negligent act. And under section 161, a failure to remove a thing can constitute "a continuing trespass for the entire time during which the thing is wrongfully on the land." *Id.* cmt. b.

The district court's reasoning that Timbershore must have committed an act that set in motion a wrongful intrusion upon Chiu's property is correct, but only as to a trespass theory based on the initial entry under section 158(a). However, Chiu's trespass claims are consistent with a failure-to-remove theory under sections 158(c) and 161. Based on his negligence claim, Chiu can argue, under section 158(c), that Timbershore had a common-law duty to remove the infiltrating water from his townhome—that is, to

14

turn off the water supply to the leaking pipe—and that Timbershore trespassed by intentionally failing to do so. Chiu can also argue, under section 161, that Timbershore tortiously placed the leaking water in his townhome and allowed it to remain there by failing to turn off the water supply.

Timbershore argues that section 161 is inapplicable because Timbershore did not intentionally cause the leaking water to infiltrate Chiu's property. Timbershore relies on *Victor v. Sell*, in which the Minnesota Supreme Court stated that "if there were no initial tortious trespass, there could be no trespass by failure to remove a chattel tortiously placed on the land under [section] 161." 301 Minn. at 314, 222 N.W.2d at 340. Timbershore contends that *Victor* requires "an intentional entry before failure to remove constitutes a trespass." But neither *Victor*'s discussion of section 161 nor section 161 itself uses the word "intentional." Both use the word "tortious." And as used in section 161, "tortious" means "conduct, whether of act or omission, [that] is of such a character as to subject the actor to liability under the principles of the law of Torts." Restatement (Second) of Torts § 161 cmt. a. Thus, the initial entry under section 161 could be a result of a negligent act or a negligent failure to act. Chiu argues that Timbershore's negligence caused the initial leak, as well as the continued water infiltration. If Chiu proves his negligence claims, that may impact whether the entry of the leaking water into his unit was "tortious" under section 161.

Chiu argues that his trespass claims also find support under section 160 of the Restatement, "Failure to Remove Thing Placed on Land Pursuant to License or Other Privilege." *See* Restatement (Second) of Torts § 160. However, section 160 requires a

plaintiff to have consented to the defendant placing a thing on the plaintiff's land or that the defendant had a privilege to place the thing on the plaintiff's land. *Id.* Because there is no evidence that Chiu consented to the water infiltration or that Timbershore had a privilege to allow the water infiltration, section 160 does not support Chiu's claims.

Lastly, we note that the Minnesota Supreme Court's most recent case regarding the law of trespass, *Johnson v. Paynesville Farmers Union Coop. Oil Co.*, 817 N.W.2d 693 (Minn. 2012), is not inconsistent with our reasoning. The issue in that case was whether an intangible entry may constitute a trespass. *Id.* at 700. The supreme court held that a trespass requires a tangible invasion that interferes with possession. *Id.* at 705. If there is no tangible invasion or interference with possession, no trespass occurs. *Id.* Chiu has alleged a tangible invasion (i.e., water infiltration from Timbershore's leaking water pipe) and interference with possession (i.e., water damage to his townhome and personal property). Thus, *Johnson* does not preclude Chiu's trespass claim against Timbershore.

In sum, although intent may be required to establish trespass, the requisite intentional act may be the failure to remove a thing from another person's land where there is a duty to remove, instead of an intentional entry of the land. *See* Restatement (Second) of Torts § 158(a), (c). Trespass may also be based on the continued presence of a thing that was negligently placed on another person's land. Restatement (Second) of Torts § 161. Given the multiple forms of trespass that have been recognized by Minnesota appellate courts, the district court erred in concluding that Chiu's trespass claims fail because he did not present evidence that Timbershore intentionally set a wrongful intrusion in motion.

16

*Conclusion*

In conclusion, Timbershore has a common-law duty, as an easement holder, to maintain and repair its easement and not to misuse its easement. And, there are genuine issues of material fact regarding whether Timbershore breached that duty. We therefore reverse the district court's grant of summary judgment for Timbershore on Chiu's negligence claims. And because Minnesota law allows Chiu's trespass claims even though Timbershore did not intentionally set the water infiltration in motion, we reverse the district court's grant of summary judgment for Timbershore on Chiu's trespass claims. We remand for further proceedings consistent with this opinion.

**Reversed and remanded.**